[Civ. No. 1295.   Second Appellate District.—March 15, 1913.]

WILLIAM EDDY, Individually and as Agent for the Eddy Family, Appellant, v. THE AMERICAN AMUSEMENT COMPANY (a Corporation), Respondent.

Corporations—Director of Circus—Authority to Employ Performer.—The director-general of a circus company, who employed a performer for one season, has ostensible authority to re-employ him for the next season.

Id.—Restrictions on Authority of Director—Private Instructions.—The rule that a principal cannot limit the apparent authority of his agent by private instructions is here applied where the director-general of a circus company, acting as its ostensible agent, employed a performer.

Id.—Ratification of Director's Contract.—The rule that a principal will be held to have ratified an unauthorized contract entered into by his agent, if he does not repudiate the contract after being informed of it, is here applied to a circus company whose director-general, ostensibly acting as its agent, employed a performer.

Id.—Authority of Director—Evidence—Letters.—Where a circus performer sues the company for breach of the contract of employment, and the defendant denies that the execution of the contract by its director-general was authorized, letters written by the director-general, long after the execution of the contract and evincing a feeling of bitterness and vindictiveness, are inadmissible.

Id.—Findings—Time for Filing—Directory Statute.—Section 632 of the Code of Civil Procedure, requiring findings to be filed within thirty days after submission of the case, is merely directory.

ID.—APPLICATION TO REOPEN CASE BECAUSE OF FAILURE TO PRODUCE
EVIDENCE THROUGH MISTAKE.—It is proper to refuse to reopen a
case after the decision is announced, but before the findings and
judgment are filed, to admit evidence which the court believes will
not justify changing the decision, the failure to produce the evi-
dence at the trial having been due to counsel's mistake in law in
that he did not deem it material or necessary.

ID.—AFFIDAVIT ON MOTION TO REOPEN—EVIDENCE.—Affidavits read at
the hearing of a motion to reopen the case cannot be deemed evi-
dence touching the facts found, and must be disregarded in con-
sidering the evidence supporting the finding.

APPEAL from a judgment of the Superior Court of Los
Angeles County.   George H. Hutton, Judge.

The facts are stated in the opinion of the court.

Elon G. Galusha, F. E. Davis, and J. W. Cochran, for Ap-
pellant.

John T. Bottom, and Denis & Loewenthal, for Respondent.

SHAW, J.—This is an action to recover damages for breach
of contract alleged to have been made by defendant with
plaintiff.   The court gave judgment for defendant, from which
plaintiff appeals.   The alleged contract upon which the action
is based is one whereby defendant employed plaintiff and his
family as acrobatic and high-wire performers for the season
of 1907.   The contract, in duplicate, was executed on Decem-
ber 13, 1906, at Chihuahua, Mexico, by plaintiff and one Will-
iam Sells, who purported to act for and on behalf of defend-
ant, signing defendant's name thereto by himself as manager.
At the time of the execution thereof, Sells delivered one copy
to plaintiff, retaining the other in his possession until after
this controversy arose, when he delivered the same to plain-
tiff.   Defendant claims that Sells had no authority to make
the contract in its name.

The contention of appellant is that Sells, if not as actual
agent of defendant empowered to execute the contract, never-
theless, had ostensible authority so to do; that if lacking in
such authority, his act in making the contract was ratified
by defendant and H. H. Tammen, its general manager, who

did have power to make the same.   As to this and other con-
tentions, the court found against plaintiff, and on this appeal
he attacks these findings upon the ground of insufficiency of
the evidence to support them.

In support of his claim counsel for appellant quote at great
length from affidavits read at the hearing of a motion to re-
open the case.   In no sense can these affidavits be deemed
evidence touching the facts so found, and therefore the
lengthy excerpts therefrom must, in considering the evidence
supporting the findings, be wholly disregarded.

It appears that defendant was the owner of a traveling
circus, known as "The Sells-Floto Show," the general office
of which was in Denver, Colorado.   One H. H. Tammen was
general manager of the corporation, having full power for
and on its behalf to engage performers and to make con-
tracts with them for professional services, obligating the
company to pay therefor.   At the close of the season in
Chihuahua, Mexico, December 12, 1906, William Sells was,
and had been during the season, an employee of defendant
under the name and title of director-general, and as such,
as appears from the testimony on behalf of defendant, "had
practically the entire business management, seeing that every-
thing run along smoothly."   His duty was to assist the gen-
eral manager, and, in his absence, to manage the show, hav-
ing general direction of the performers, the loading and un-
loading of trains, the instructing of advance agents as to
their billing and newspaper contracts and the execution
thereof, and when authorized in writing so to do by Tammen,
to make contracts of employment with performers and actors
for services to be rendered during the season and to discharge
them for cause if their performance was not as contracted.
In the fall of 1905 Sells had written plaintiff, offering to
engage him and his family for defendant, signing the letter
"William Sells, Director-General of The American Amuse-
ment Co.," and plaintiff and his family had been with the
circus as acrobatic and high-wire performers during the sea-
son of 1906, under a contract made in the early part of the
season with Sells acting for and on behalf of the company.
The general manager was not in Mexico when the contract
was made, having left the show six days prior to such time.
Now, while Sells was vested with these powers and, with de-

fendant's knowledge, exercised the same without, other than in this instance, the disapproval of defendant, or its general manager, the evidence conclusively shows that it was privately understood between Sells and the defendant that his acts were subject to the approval of H. H. Tammen, general manager, under whom he acted and to whom, or to defendant at Denver, he was required to report the same.

Upon counsel for defendant stating they would show that plaintiff had knowledge of such limitations so placed upon the powers of Sells, the objection of plaintiff to the introduction of evidence showing this private understanding between Sells and defendant was by the court overruled. "Where the special character of the agency is not known and the principal has clothed the agent with apparent powers, strangers in dealing with the agent may assume that such apparent powers are possessed. The principal cannot by private communications with his agent limit the authority which he allows the agent to assume." (Clark on Contracts, p. 734; *Robinson* v. *American Fish etc. Co.*, 17 Cal. App. 212, [119 Pac. 388]; *Leavens* v. *Pinkham & McKevitt*, 164 Cal. 242 [128 Pac. 399].) In the absence of any evidence tending to show that plaintiff had knowledge of this private agreement, the facts, in our opinion, clearly establish ostensible authority (Civ. Code, sec. 2317) in Sells to make the contract and defendant is estopped from denying the same. Respondent, however, invokes the provisions of section 19 of the Civil Code, to the effect that notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact is constructive notice of the fact itself, if by prosecuting such inquiry he might have learned of such fact, and insists that such circumstances were shown. The circumstances upon which respondent relies in support of its contentions are, that weeks before the making of the contract it was agreed between the general manager and Sells that the latter would not be employed by defendant during the season of 1907, and that such fact was generally known around the show; that in making the contract the parties used a printed form adopted by defendant which contained a provision to the effect that, upon conditions specified therein, either party might terminate the agreement upon notice; that this provision was stricken out and a provision inserted that the engagement of plaintiff and his

family for the season of 1907 should not be less than thirty weeks; that it was the custom of circuses in making contracts with actors to insert a provision for the termination of such contracts upon notice. As made the contract further provided that plaintiff and his family in traveling with the show should have the use of a stateroom and not be required to take part in parades. Otherwise, so far as we are advised, the contract as executed was in accordance with the printed form used by defendant. There was nothing upon the form of contract indicating that to make it legal and binding upon defendant it should be signed, countersigned, or approved by H. H. Tammen, general manager. While the season closed on December 12, 1906, at which time Sells and others were paid their salaries, he continued in the employ of defendant, having charge of the circus, which he conducted to its winter quarters at Venice, California, plaintiff and his family accompanying the show to the place where they took up winter quarters. On December 13, 1906, a benefit was given to Sells, the performers contributing their services and defendant contributing the circus paraphernalia, which contribution on the part of defendant was the consideration paid Sells for his continued services in conducting the show to Venice, California. In our opinion, there is nothing in these circumstances calculated to put plaintiff upon inquiry as to whether Sells had been divested of the authority theretofore reposed in him to make the contract for and on behalf of defendant. Knowledge of the fact that Sells's employment had terminated, or that he would not be in defendant's employ, or connected with the show in 1907, was not imparted to plaintiff. (*Swinnerton* v. *Argonaut L. & D. Co.*, 112 Cal. 375, [44 Pac. 719].). Plaintiff testified that he did not know that the connection of Sells with defendant had been severed until the spring of 1907; nor does it appear that he knew of the arrangement under which Sells conducted the show to Venice. We are unable to perceive anything in the giving of the benefit calculated to arouse any doubt in the mind of. plaintiff as to the continued authority of Mr. Sells. While the failure to insert in the contract provisions for the termination of the same might be inconsistent with good business policy, nevertheless, since it was a matter solely of agreement between the parties, and a contract which they clearly had

the right to make, we are unable to perceive anything in such transaction calculated to arouse any suspicion or question on the part of plaintiff as to Sells's want of authority which he had theretofore, with defendant's knowledge and consent, assumed. It clearly appears that plaintiff, up to February 13, 1907, acted in the honest belief that he was bound by the contract so made with defendant for the year 1907, on account of which, as found by the court, he made no effort to obtain employment elsewhere, and that by reason of such fact whatever opportunity may have existed for other employment was lost. Not only was there ostensible authority vested in Sells to make the contract, but we think subsequent acts of defendant estopped it from denying such authority. While it appears that Sells neglected his duty, to inform defendant of the making of the contract, for which plaintiff is in no wise responsible, knowledge of the fact that he had made a contract whereby he purported as the agent of defendant to employ plaintiff and his family for the season of 1907, in the capacity in which they had theretofore served during the season of 1906, was brought to defendant's attention in January, 1907. Upon learning of the fact defendant did not repudiate the act of Sells for want of authority. It in no way questioned his right to make the contract for and on behalf of defendant, but, instead thereof, recognized the same as an existing contract betwen plaintiff and defendant. This recognition is evidenced by a letter as follows:

"DENVER, Thursday, January 24, 1907.
"Mr. William Eddy,
    "C/o Sells-Floto Shows,
        "Venice, Cal.
"My dear Mr. Eddy:
    "As I understood it, according to the contract you have with us, you were promised a stateroom in our train next season.
    "I will be unable to give you the same for the reason that we are not going to alter or change our train in any way, but you are welcome to have the same departments you had last year.
    "I also, however, wish to have you take notice that I was thoroughly dissatisfied with the general uncleanliness of our train last year, and I am going to make unusual efforts to see

that the sleeping cars especially are kept right up to the highest standard of sanitary conditions, and, therefore, we will allow no cooking or smoking or the burning of candles in or about the train.

"In other words, to make myself plainer, when I say that the sleeping cars will only be used for sleeping and living purposes, and no other *et ceteras* will be allowed in any form, shape or manner.

"In writing you this I am simply putting it plain and fully, and everybody will have to obey these rules, but if for any reason the stateroom part or any other part or conditions contained in this general order are in any way offensive or unsatisfactory to you, I wish you would please let me know by return mail.

"Yours as always,"

The use of the words contained in the letter, to wit: "according to the contract you have with us," is significant in showing that defendant possessed knowledge of the contract and the action of Sells on its behalf in making it. While in a tentative way defendant suggests a modification with reference to the provision for supplying plaintiff and his family with a stateroom, and expresses its intention to adopt certain rules for better sanitation, it asks for a reply thereto only in case the suggested modification and rules should be unsatisfactory to plaintiff. Apparently the modification suggested was acceptable to plaintiff, and hence no occasion existed for replying thereto. Thereafter, on February 13th, Tammen again wrote to plaintiff, sending the letter through Mr. Perry, auditor of the Floto Show, asking him to read the letter, seal it up, make personal delivery, and let him know the result. This letter is as follows:

"We herewith give you notice that we are desirous of cancelling your contract with the American Amusement Company, Owner Sells-Floto Shows, for the season 1907, which we hope will be agreeable to you."

It thus appears that defendant again recognized plaintiff as holding a contract executed by Mr. Sells for and on its behalf. If Mr. Sells, as claimed, had no authority to bind defendant by executing a contract, it was clearly defendant's duty upon learning of such fact, without reference to the nature of the contract, to at once repudiate the act of Sells

and notify plaintiff of such fact. Plaintiff and his family, up to February 13th, relied upon the contract and, in order to perfect themselves therein, practiced the acts which they had agreed to perform, and made no effort toward seeking employment elsewhere. We think the evidence conclusively shows that Sells was clothed with ostensible authority to make the contract, and that defendant by reason of its acts is estopped from denying such fact.

Appellant contends that the court erred in denying his motion to reopen the case after its submission. On October 5, 1910, the evidence being closed, the case was submitted to the court for its determination, whereupon the court announced its decision in favor of defendant. Thereafter, on December 5th, pursuant to notice of intention so to do, and before the court had made and filed its findings of fact and conclusions of law, plaintiff moved the court to set aside the submission of the case, reopen the same and permit him to introduce further evidence. The grounds of the motion were: 1. That the court had neglected and failed to file its findings of fact and judgment within thirty days after the submission; 2. That since the close of the trial plaintiff's attorneys had learned that their client, if permitted, would be able to prove material facts set forth in an affidavit, copy of which was attached to the notice of motion, and that if the facts set forth therein were established, they might, as believed by plaintiff, influence the court in rendering a different judgment; 3. "That all of the facts sought to be established by the plaintiff are such as the plaintiff could not reasonably anticipate it would be necessary to establish" at the trial; 4. That plaintiff entered upon the trial with the understanding that a stipulation should be made between the parties that the deposition of an absent witness might be taken and submitted as a part of plaintiff's case, but that plaintiff waived the right to said stipulation for the reason that his counsel believed that opening remarks made by the court in announcing its decision indicated an intention on the part of the court to give judgment for plaintiff; and 5. That owing to great noise in the courtroom during the trial plaintiff's attorney could not make himself heard by the court or hear what the court had to say, and that during the reading of the deposition plaintiff's counsel desired to object to certain parts

thereof, but did not have an opportunity so to do. In support of this motion voluminous affidavits were offered. Upon hearing the court denied the motion, from which order plaintiff gave notice of an appeal. The order was one made during the trial, not after final judgment, and hence is not an order specified in section 963 of the Code of Civil Procedure, as one from which an appeal will lie. If the action of the court in denying the application was an abuse of judicial discretion, it may, however, be reviewed upon an appeal had from the judgment.

The provision of section 632 of the Code of Civil Procedure, requiring findings to be filed within thirty days after submission of the case is merely directory. (*Kepfler* v. *Kepfler*, 134 Cal. 205, [66 Pac. 208].) As to the second ground specified as a reason for granting the motion, the court was apparently satisfied—indeed, it so stated—that no foundation existed for believing that proof of the facts set forth in the affidavit would warrant it in deciding otherwise than it did. Plaintiff's failure to produce at the trial evidence of facts other than those established was due, as shown by the affidavit of his counsel, to a mistake of law, in that he did not deem the evidence material or necessary. The admitted waiver of plaintiff as to any right based upon the alleged oral agreement to enter into a stipulation for the taking of the deposition of an absent witness, is sufficient answer to the fourth ground specified in the notice of motion. We find nothing in the record even tending to support the fifth alleged ground upon which the motion is based. Indeed, it appears that when counsel stated his wish to object to certain parts of the deposition read, he was told by the court that he would have an opportunity so to do, but counsel failed to avail himself of such right. We think it sufficiently appears from the grounds specified for the making of the motion that there was no error in the ruling of the court in denying the same. However this may be, an examination of the voluminous affidavits read in support thereof, considered in connection with the evidence adduced at the trial, clearly shows a want of any abuse of judicial discretion exercised by the court in making the order denying the motion. The alleged facts contained in the affidavits consist largely of immaterial matter, hearsay, and cumulative evidence, which,

as the trial court stated in its ruling, could not change the opinion of the court based upon evidence offered at the trial.

Another error which merits attention is that defendant, over plaintiff's objection, was permitted to introduce the contents of certain letters produced by plaintiff and written by Sells to plaintiff months after the making of the contract. As shown by the pleadings, the only issue involved was whether or not defendant had executed the instrument. No fraud or collusion is pleaded, the allegation of the complaint being that defendant on a certain day made, executed, and delivered the contract, which allegation is denied by the answer. No facts are pleaded under which, upon any theory of the case, these letters constituted competent evidence. Sells was not a witness. While the letters evince on his part an intense feeling of bitterness and a vindictive spirit toward defendant, they were not declarations forming any part of the transaction (Code Civ. Proc., sec. 1850), but made long thereafter. If Sells possessed authority to act for defendant in making the contract, then his motive in so doing, whether good or bad, is wholly immaterial. If, on the other hand he possessed no such authority, his motive is likewise immaterial. (*Boyson* v. *Thorn*, 98 Cal. 578, [21 L. R. A. 233, 33 Pac. 492] ; *Macey* v. *Childriss*, 2 Tenn. Ch. 438.) Respondent insists that the letters were competent for the purpose of impeaching the testimony of Eddy, who had, in response to a question as to whether he received a specified letter from Sells, stated that he did not preserve personal letters and the one in question had been mislaid or lost. Even conceding respondent's claim in this regard, it would have been sufficient merely to exhibit the letters without offering their contents in evidence.

Appellant directs our attention to other alleged errors of a minor nature. Our conclusion, however, renders a discussion of the same unnecessary. Suffice it to say, that as to some of the rulings complained of no objection was made thereto at the trial, and as to others appellant expressly assented to the same.

The judgment is reversed.

Allen, P. J., and James, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on May 14, 1913.