[Civ. No. 1294. Third Appellate District.—December 11, 1914.]

## HENRY KURZE, Appellant, *v.* JESSIE M. DOUGLAS, Respondent.

APPEAL—ORDER DENYING A NEW TRIAL—SUFFICIENCY OF—EVIDENCE TO SUSTAIN FINDINGS—AFFIDAVITS.—Affidavits made subsequent to the judgment in a case cannot be considered on appeal in determining the sufficiency of the evidence to justify the decision, which is necessarily based upon the evidence taken at the trial.

ID.—ACTION TO QUIET TITLE—DEED OF GIFT—DELIVERY—SUFFICIENCY OF EVIDENCE.—In this action to quiet title to certain real property of which the defendant alleged ownership under a deed of gift claimed by her to have been executed and delivered to her by the plaintiff, which plaintiff contended was never delivered, it is held that the evidence being conflicting on the question of delivery, it was the province of the trial court to determine the question and its decision thereon will not be disturbed on appeal.

APPEAL from a judgment of the Superior Court of Alameda County and from an order refusing a new trial. William H. Waste, Judge.

The facts are stated in the opinion of the court.

John Yule, for Appellant.

H. L. Breed, for Respondent.

CHIPMAN, P. J.—Plaintiff commenced the action to quiet title in him to certain premises situated in the town of Emeryville, alleging that he "for more than five years last past has been in the actual, exclusive and adverse possession" thereof (describing the premises) and "has paid all taxes of every kind and nature levied and assessed on or against said premises for more than five years continuously next preceding the filing of the complaint herein," which was filed October 17, 1911.

Defendant denies the averments of the complaint and alleges ownership in herself by virtue of a deed from plaintiff to her, "executed and delivered by plaintiff to defendant on or about the 15th day of September, 1909"; that said deed was duly recorded on January 10, 1910; "alleges that the Jessie M. Kurze referred to in said deed is the same person as Jessie M. Douglas; that this defendant is an unmarried person." Claiming ownership in fee, she asks to have her title quieted and that it be decreed that plaintiff has no right, title, or interest in said premises.

The court found that plaintiff had paid all taxes levied or assessed on the premises for more than twenty-five years continuously next preceding the filing of the complaint. No further finding was made on the subject of plaintiff's alleged adverse possession and there was no evidence supporting such averment of the complaint. Plaintiff's ownership, however, prior to the alleged conveyance to defendant is not disputed. The court found that plaintiff executed and delivered to defendant a deed conveying said property, on the fifteenth day of September, 1909, and "thereupon defendant became and ever since has been the owner of all said real property, land and premises by virtue of said deed"; that said deed was duly recorded on January 10, 1910; that, "at the date of the execution and delivery of said deed and of the recording thereof, this defendant, Jessie M. Douglas, was sometimes called and known as Jessie M. Kurze. That the Jessie M. Kurze named in said deed as the grantee and party of the second part is the same person as said defendant Jessie M. Douglas; that this defendant, Jessie M. Douglas, is an unmarried person."

"As conclusions of law from the above findings and the admissions of the pleadings, the court finds that defendant is entitled to a judgment of this court as prayed for in her answer." Judgment was accordingly duly made and entered. Plaintiff appeals from the judgment and from the order denying his motion for a new trial.

Plaintiff's motion for a new trial purports to have been made on the following grounds: 1. Newly discovered evidence; 2. Insufficiency of the evidence to justify the decision of the court; 3. That the decision of the court is against law; and, 4. Errors of law occurring at the trial and excepted to by the plaintiff. It was stated in the notice that the motion "would be made upon affidavits and upon a statement of the case hereafter to be prepared."

In his brief, appellant does not seriously urge the ground of newly discovered evidence and he makes no mention of errors of law committed at the trial. Upon the alleged insufficiency of the evidence to justify the decision, appellant so mixes up the testimony given at the trial with statements made in affidavits taken after the judgment was entered, that we find it difficult to separate the one from the other. Clearly, these affidavits have no place in considering the sufficiency of the evidence to justify the decision which was necessarily based upon the evidence taken at the trial. Subsequent affidavits cannot be used to attack findings. Affidavits may not be used for any such purpose. (Code Civ. Proc., sec. 658, 2009; *Eddy* v. *American Amusement Co.,* 21 Cal. App. 487, [132 Pac. 83].) The essence of appellant's contention as to the deed made by him to respondent is that there was no delivery.

It appeared that defendant went to work for plaintiff as his housekeeper for wages. After about two months plaintiff asked defendant to marry him. She was then a married woman and explained why she could not marry him then. The story of their relations may better be told by defendant. She testified: "I was left in poverty with two children to support, myself, and I went there to work in the first place to make an honest living. And when he saw I could not marry him in the condition I was in and under the circumstances he proposed to live together. I refused him and kept refusing him and told him I did not want to live with him and I threatened to leave. He kept after me and after me until

finally it did happen and I lived with him. I assumed the
name of Kurze when I began to live with him as his wife. I
began living with him as his wife about two months after I
was there. I lived with him as his wife about four months
before he gave me the deed. When I first went there I told
him how I was situated. I told him then if I got free and
nothing happened 'I will marry you when I am free.' (She
was then a married woman.) That is the only time I prom-
ised to marry him. . . . After I was there about two months
we were talking one day about wills, and he had made his
will out to me. We were talking about people trying to
make trouble over wills. He had had some trouble with the
place next door—it belonged to his first wife—and he said
'Jessie, I will give you one of those places, whichever one you
want I will make a gift deed and give it to you. That is what
he said. I never asked him for the place. He gave it. There
was no consideration for the deed. He gave it willingly, and
he gave it to me. I did not ask him for it. The deed was
not given in consideration of marrying him. There was no
consideration for the deed. He gave me the place willingly.
When I first went there I promised to marry him, as I told
you. Three or four months before the deed was given. . . .
When I first went there I intended to marry him. I changed
my mind after he commenced to abuse me the way he did,
treating me so. The last year I was there I lived in contin-
ual fear. I was afraid of the man. I felt that I could not
stay with him no longer, and when I got a place to work, I
left. That is why I left. . . . The deed was recorded Janu-
ary 10, 1910. In the intervening months after recording the
deed, he did not again refer to recording the deed. On one
occasion after recording the deed, the children were out in
the yard picking flowers, and he came in and he says: 'I think
you could make your children behave themselves and let the
flowers alone. The place is yours, and if you do not want
to take care of it, I don't.' There was another time after
that we had some words, and he says: 'I will beat you out
of the place if you leave.' One day at the table, before my
mother, we were speaking about the street work, and I says:
'I guess I will have to mortgage my place to pay the street
work.' He said: 'You will have to mortgage your place to
pay the street work.' Q. Why was it you recorded the deed?
A. Because he told me a couple of times it did not need to

be recorded, so finally my brother George asked me if the deed was recorded and I said 'No.' He said, 'You better have it recorded. It is no good if you do not. He can turn it to somebody else,' and even then I took Mr. Kurze's word for it. I said, 'Hadn't I better have it recorded?' He said, 'No, it don't need to be recorded.' My brother and my mother talked together and he said 'You better have it recorded to make sure.' I got suspicious the way he acted and treated me, so I had it recorded.''

Plaintiff testified that he did not deliver the deed to defendant, but that after its execution he placed it in a book-case where he kept his papers and that defendant took it from there without his knowledge and had it recorded and that the first he knew about its recordation he learned from seeing it stated in a local paper. On this question of delivery (no question of want of consideration or failure of consideration is raised) there was a conflict which it was the province of the court to resolve. There was evidence tending to corroborate defendant's testimony.

The facts brought out in the affidavits used on the hearing of the motion for a new trial are in hopeless conflict. The point relied upon was that plaintiff did not know until the day of the trial that defendant claimed a delivery of the deed and hence he could not produce George Larabee, the witness by whom he expected to show that the deed was not delivered. This claim does not appear to us as having merit. He knew from the answer of defendant that she claimed both the execution and delivery of the deed; he knew within a week after it was recorded that defendant claimed the property under the deed. Plaintiff and Larabee were friends and had been partners in business; at the trial several members of the Larabee family (defendant was George Larabee's sister) were witnesses, including George Larabee's wife. Slight diligence would have enabled plaintiff to produce Larabee at the trial. In fact, he showed no diligence, relying on his ignorance or forgetfulness that the delivery of the deed was an important issue in he case. Furthermore, counter affidavits were introduced by defendant which brought about an irreconcilable conflict between the facts stated by George Larabee in his affidavit and those controverting it. The court might well have concluded, from the facts shown by these affidavits at the hearing of the motion, that but little credence

should be given the statements of George Larabee. The deed was recorded in January, 1910, and plaintiff knew the fact a week later. Defendant did not leave the premises or cease living with plaintiff until in October, 1911, and plaintiff commenced the action a few days thereafter. For nearly two years he knew that defendant claimed the property by virtue of his deed to her. It does not seem reasonable that during all that time he believed the deed to be invalid for want of delivery.

We are unable to discover any ground for reversing the order. There is sufficient evidence to support the findings and the latter support the judgment.

The judgment and order are affirmed.

Hart, J., and Burnett, J., concurred.