[Civ. No. 13552.   Second Dist., Div. One.   May 21, 1942.]

RITA STANWOOD WARNER, Respondent, v. MILO M. MARCHETTI, Appellant.

Henry G. Bodkin, Peter J. Youngdahl, Bodkin, Breslin & Luddy and G. Stuart Silliman for Appellant.

Goodspeed, McGuire, Harris & Pfaff for Respondent.

YORK, P. J.—This is an appeal from a judgment in favor of plaintiff, a so-called talent scout for the moving picture industry, for the sum of $767.66, being 50 per cent of commissions received by defendant, a licensed theatrical employment agent, for services rendered by the latter as agent for Susanna Foster, a moving picture actress, said judgment providing procedure for an accounting of future commissions received by said defendant as agent for said actress.

The complaint alleges and it was found by the court, among other things, as follows:

"III. That shortly after April 22, 1938, plaintiff and defendant entered into a contract whereby defendant agreed to pay plaintiff one-half of all commissions at any time received by defendant resulting from his presentation and placing of stage, screen and radio personalities located by plaintiff and introduced by her to defendant.

"IV. That thereafter and on or about May 23, 1938, plaintiff located a prospective screen personality, one Suzanne Larson, now known professionally as Susanna Foster, and

on or about June 4, 1938, introduced said Susanna Foster to defendant.

"V. That on or about June 6, 1938, defendant signed an employment agency contract with said Susanna Foster and her mother Adelaide F. Larson, for an agent's commission of ten (10%) per cent of the earnings of said Susanna Foster, which contract was also signed by her father, L. L. Larson, a few days thereafter. That defendant at all times thereafter acted and is still acting as employment agent for said Susanna Foster.

"VI. That thereafter on or about the month of May, 1939, while defendant was her agent, said Susanna Foster obtained employment as a motion picture actress, and has ever since been and is now so employed under contract, with Paramount Pictures, Inc.; and defendant has ever since been and is now receiving commissions as employment agent for said Susanna Foster at the rate of ten (10%) per cent of the professional earnings of said Susanna Foster."

It is here maintained that the findings and judgment are (a) against the law, and (b) against the evidence.

The evidence adduced at the trial of this cause reveals that appellant is a licensed motion picture agent with offices in the city of Los Angeles; that respondent is a talent scout and as such locates potential moving picture personalities which she introduces to agents, who in turn find employment for said talent with the moving picture industry for which said agents receive a commission of 10 per cent of the earnings of said actors or actresses.

On or about April 22, 1938, appellant called respondent on the telephone in connection with a certain case involving an actress known as Deanna Durbin, who had been discovered by respondent, in the course of which appellant stated: "If you get any more Deanna Durbins bring them to me . . . and I will give you half of my commission on anybody you bring into my place to introduce to me." At a meeting between the parties in appellant's office at a later date he said: "Don't forget, Rita, you are going to have a lot of publicity after this is over, and any business you can get to bring to my office I will give you half of my commission."

On or about May 22 or 23, 1938, respondent received a letter from Mrs. Larson, the mother of Suzanne Larson, professionally known as Susanna Foster, saying she would like respondent to hear her daughter sing. Respondent im-

mediately telephoned appellant and told him: "I would like to come down and see you; I think I have found another good find." Respondent went to appellant's office a day or two thereafter and said: "I have got an engagement to hear this little girl sing next Sunday. Would you like to come down to hear her sing?" to which appellant replied: "No, you go ahead, Rita, and use your own judgment." Respondent returned and told appellant she had heard the child sing and thought she was fine, and appellant said: "Bring her in here as quick as you can. . . . I will give you half of the commission on anything you bring into this office." On June 6, 1938, the child and her mother were introduced to appellant by respondent, at which time appellant stated that respondent was to receive one-half of his commission for representing Susanna Foster. Mrs. Larson testified that her recollection of the conversation was: "So I read the contract over and I noticed there was nothing said about Mrs. Warner in the contract, her name didn't appear in the contract at all, and she is the one whom I wished to have get the credit for the discovery of Suzanne if she proved to be any good. So I said, 'What is Mrs. Warner going to get out of it?' 'Oh,' he said, '50-50, we are 50-50.' . . . I said, 'What do you mean, 50-50'? I said, 'Your agency commission is 10 per cent, isn't it?' 'Oh,' he said 'we will split it.' Then I said that myself, 'You will each get just 5 per cent?' He said, 'That's it.'"

Mrs. Evelyn Byrd Christian testified with respect to a conversation she had with appellant in the early part of July, 1938, as follows:

"I went to Mr. Marchetti's office to talk to him about going in the theatrical agency business; and in that conversation with Mr. Marchetti, in talking over about going into this theatrical agency, he asked me, wouldn't I like to work out the same kind of a thing he had worked out with Mrs. Rita Warner, that any one she brought to his office or introduced to him he would give her 50 per cent of any moneys that were made off of her. And he pointed out to me that she had brought this little girl, Suzanne Larson, now known as Susanna Foster; and I said, 'No, Mr. Marchetti, I would rather pay you monthly rent and work out something like that, because I want to learn the agency business.' And I had my attorney draw up a contract and I paid Mr. Marchetti $30 a month and I had to give him a third of everything—

any one that was signed up from his office; and we have a regular contract drawn up.''

Appellant testified that in the latter part of May, 1938, he had a conversation with respondent at which time he promised to split his fee of 10 per cent with her on contracts he secured for Susanna Foster, but that such promise was conditional upon respondent becoming an associate of his in charge of the juvenile department of his agency. He further testified that respondent was with him for two months leaving of her own accord; that it was during that time that respondent brought Susanna Foster to his office; that he represented Miss Foster on and after June, 1938, except for the period from October 22, 1938, until February 6, 1939, when Miss Foster was studying music with his (appellant's) sister.

There is evidence in the record that on another occasion in May or June of 1938, appellant and respondent had a conversation with respect to executing a contract under which respondent would become associated with appellant's agency for the purpose of managing the juvenile department, but this discussion occurred after appellant had agreed to divide his commissions with respondent if she was successful in locating talent and brought them to his office so he could represent them. A tentative agreement to this effect was drawn up in writing by respondent's attorney, but it was neither approved nor executed by either appellant or respondent.

Appellant secured employment for Miss Foster with Paramount Pictures, Inc., in May of 1939, and when respondent made demand upon appellant in October of 1939, appellant refused to pay her the agreed commission.

From what has been said it is obvious that there is ample evidence to support the findings and judgment.

■ In connection with his point that the findings and judgment are against law, appellant contends that the contract found to have existed between him and respondent was void and unenforceable because of his dereliction to comply with certain sections of the Labor Code, to wit: Subdivision (e) of section 1582, which requires that there shall be reported to the Labor Commissioner the names and addresses of all persons financially interested, either as partners, associates or profit sharers, in the operation of an employment agency, together with the amount of their respective interests; section 1595 which announces that the license of an employment

agent shall be forfeited if he fails to secure the written consent of the Labor Commissioner to the sale, transfer or giving away of ''any interest in or the right to participate in the profits of the employment agency.'' And section 1642 which prohibits an employment agency from dividing fees ''with an employer, an agent or other employee of an employer or person to whom help is furnished.''

There is nothing in the record herein which would substantiate the claim that respondent was financially interested as a partner, associate or profit sharer in the operation of appellant's business. As a talent scout, respondent was an independent contractor whose task was completed when she discovered a potential artist and introduced such artist to appellant or to any other agent in the field. She has no contractual relations with the prospect and has no control over the business transactions by which the agent seeks to procure employment for such prospect. Her only interest is in the payment to her of the commission agreed upon in the event she produces and introduces to the agent a potential moving picture personality.

Under the circumstances presented by the record herein, equity will not permit appellant to take advantage of his own wrong by the claim that he operated his agency in an unlawful manner and thus avoid the payment of a commission the retention of which would amount to an unjust enrichment.

For the reasons stated, the judgment appealed from is affirmed.

Doran, J., and White, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied July 16, 1942.