[Civ. No. 13628. First Dist., Div. One. Aug. 2, 1948.]

ELMA AAKER, Respondent, v. JOHN S. SMITH et al.,
Appellants.

Bernard J. Abrott and Sheridan, Hoffman & Mendel for Appellants.

Frank E. Kilpatrick and Booth B. Goodman for Respondent.

PETERS, P. J.—The defendants, three partners operating a cocktail lounge in Albany, California, known as the "Palm Gardens," appeal from a judgment awarding plaintiff $4,500 in damages for the breach by defendants of an oral annual year to year lease for certain restaurant premises and facilities located in the cocktail lounge. Defendants also notice an appeal from the order denying their motion for a new trial. That order is nonappealable, and the purported appeal therefrom should be dismissed.

The four basic contentions of appellants are (1) that respondent was in occupation of the premises only as a tenant by sufferance, and that such tenancy was properly terminated by a 30-day notice to vacate; (2) that if there was an oral annual year to year lease such agreement violated the statute of frauds; (3) that the findings that the appellants had committed acts amounting to a constructive eviction in violation of the terms of a one-year lease are totally unsupported, and (4) that in any event the entire transaction was illegal, being in violation of the Alcoholic Beverage Control Act. (Stats. 1935, p. 1123, as amended; 2 Deering's Gen. Laws, Act 3796.)

The complaint alleged that "since the first day of September 1941, and during all the times herein mentioned up to November 27th 1945, the plaintiff herein was the lessee from defendants under a verbal annual one year lease from September 1, 1941" of the restaurant premises involved; that defendants conducted an "on sale retail liquor business in the operation of a cocktail liquor lounge or bar" in the remainder of the same premises; "that plaintiff entered into the operation of said restaurant business on said premises on September 1, 1941 with the understanding and agreement with said defendants that there would be no rental charge to plaintiff in the conduct of said restaurant business therein by plaintiff in view of and for the reason that under the rules, regulations and laws of the State of California governing, controlling and having jurisdiction to regulate the sale of intoxicating liquor it was and is a necessary requirement that food be provided

for sale on premises where liquor is furnished and sold for consumption on the premises''; that for the first 12 months plaintiff operated the restaurant at a loss, but that she built the business until, for the past two years, she had been operating at a monthly profit of $500; that on October 10, 1945, defendants served her with a notice to quit the premises, which notice is attached to the complaint as an exhibit; that plaintiff refused to quit, and told defendants that ''she would insist upon her rights under said verbal annual lease which did not expire until September 1, 1946.'' The complaint then alleged, in substance, a constructive eviction. It sets forth a whole series of alleged acts and representations by defendants, which plaintiff alleges compelled her to abandon the premises on November 27, 1945. It was then alleged that her business was thereby lost for the nine remaining months of her alleged verbal lease—i. e., until September 1, 1946—at the profit rate of $500 per month. Her prayer was for $4,500 in damages, which amount, as above indicated, was awarded her.

The court's findings followed, substantially, the allegations of the complaint. The conclusions of law are to the effect ''that the plaintiff had a valid existing verbal lease upon the premises herein referred to, which did not expire until September 1, 1946''; that ''the plaintiff was wrongfully evicted from said premises by the defendants through acts and conduct on the part of defendants designed by them to produce the wrongful eviction of plaintiff''; that by reason of the wrongful acts of defendants, plaintiff lost nine months' profits, or a total of $4,500.

The findings to the effect that plaintiff had an oral lease which would not have expired until September 1, 1946, are amply supported by substantial evidence. It appears that in August, 1941, the defendants Smith and Rose operated the cocktail lounge in question. Defendant Matheson did not become a partner until April of 1945. Prior to August, 1941, the two defendant partners had had various persons operating the restaurant located on the premises, but, apparently, none of these operators could make the restaurant into a profitable business. During the last week in August, 1941, the last operator walked out, and the restaurant was not functioning. Under these circumstances, plaintiff was approached by defendant Smith as a prospective operator of the restaurant. She testified that she had a conversation with Smith; that Smith suggested that she take over the operation of the

restaurant, which functioned in conjunction with the bar operated by defendants; that Smith told her that the restaurant part of the business had not been very good but that he could "work up a nice business if he could get someone in there"; that she asked Smith if she could have a written lease, but he replied that she could not because restaurants had to be run from the bar under the law; that "We talked then and agreed to have a verbal lease from year to year; that if the business picked up, the business would be good for me and good for him, and that we would if we went on—business would be better for us both"; that it was agreed at that time that she was to pay no rent other than 75 cents per day to pay the cost of operating the electric refrigerator; that this arrangement continued until August, 1944; that she was then told by their common bookkeeper that she was to pay $50 per month for the utilities and her portion of the sales tax; that she paid $50 per month for these purposes until she was evicted. She also testified that, under the above arrangement, she commenced operating the restaurant on September 2, 1941; that for about a year she operated at a loss, but that she gradually built the business up so that by 1945 she was averaging a profit of over $500 a month, making $6,076 profit in that year; that she operated the restaurant until November 27, 1945; that she was served with a notice to quit on October 10, 1945; that she began having trouble with defendants about the last week of October; that there was a marked decline in business after she received the notice; that thereafter the "attitude" of the defendants toward her "appreciably changed."

In discussing the nature of her tenancy, in addition to her testimony summarized above, the plaintiff stated that, subsequent to August, 1941, she talked to Smith about the continuation of her tenancy, and "Johnny told me I could be there as long as I wanted. He told me that a number of times, as long as I was happy there."

Plaintiff's witness, Cora W. Holling, testified that she had worked for plaintiff in the restaurant as a waitress; that sometime between January and June of 1942 she was present at a conversation between plaintiff and Smith; that plaintiff expressed to Smith doubts about continuing to operate the restaurant because of lack of business; that Smith urged plaintiff to continue on and "told her that if she stayed there he knew she would work up a good business and that she could stay

there as long as she liked from year to year, that she would find that business would get better as she stayed there.''

Smith admitted having a conversation with plaintiff in August, 1941, but claimed that the arrangement then made was that plaintiff could leave the project at any time. He admitted that the bar and the restaurant were operated separately, and that neither shared in the profits of the other. Separate books were kept, but the sales tax was paid as one operation, and then charged back against plaintiff.

■ Defendants contend that, as a matter of law, this evidence demonstrates that the tenancy was merely one at will or at sufferance, and that the finding that it was a year to year tenancy impliedly renewed from year to year is totally unsupported. Based upon this premise, it is urged that the October 10, 1945, notice to quit validly terminated the tenancy. In this connection reference is made to sections 1945 and 1946 of the Civil Code. Section 1945 provides as follows: ''If a lessee of real property remains in possession thereof after the expiration of the hiring, and the lessor accepts rent from him, the parties are presumed to have renewed the hiring on the same terms and for the same time, not exceeding one month when the rent is payable monthly, nor in any case one year.''

Section 1946, as it read until amended in 1947, provided as follows: ''A hiring of real property, for a term not specified by the parties, is deemed to be renewed as stated in the last section, at the end of the term implied by law unless one of the parties gives notice to the other of his intention to terminate the same, at least as long before the expiration thereof as the term of the hiring itself, not exceeding one month; provided, however, that as to tenancies for a period of a month or longer either of the parties may terminate the same by giving one month's notice thereof at any time and then rent shall be due and payable to and including the date of termination. It shall be competent for the parties to provide by an agreement at the time such tenancy is created that a notice of the intention to terminate the same may be given at any time not less than seven days before the expiration of the term thereof.''

Defendants have completely overlooked, or at least failed to mention, section 1943 of the Civil Code which reads as follows: ''A hiring of real property, other than lodgings and dwelling houses, in places where there is no usage on the subject, is presumed to be for one year from its commencement, unless otherwise expressed in the hiring.''

It is quite clear that in each case the intention of the parties is the controlling factor, and that such intention must be ascertained in view of the presumptions created by the above sections. Defendants argue that, since the original arrangement was that plaintiff was to pay 75 cents daily as "rental" to pay for the operation of the refrigerator, the original tenancy was from day to day, and any implied renewal must, under section 1945, have been on a day to day basis. While it is true that the section presumes a renewal on the basis of the rental period, it is also quite clear that the section provides that the implied renewal, where the parties so intend, may be for the period of a year, but not in excess of that period. Here the plaintiff and Cora Holling testified that the initial term agreed upon was one year. When that evidence is weighed with the presumption created by section 1943 of the Civil Code, it is obvious that the finding that the original term and all implied renewals were for one-year periods is amply supported. (See discussion in *Brill* v. *Carsley*, 2 Cal.App. 331 [84 P. 57].)

Defendants seek to invoke the presumption created by section 1945 that the implied renewal is only for a month where the rent is paid monthly, and point out that since August, 1944, plaintiff has been paying $50 per month as rent. It is by no means clear that this payment was for rent. Plaintiff testified that she made the payment to pay her share for the "utilities." The accountant who kept the books for both parties testified that such $50 payments were "allocated to sales tax and utilities." However, even if the $50 per month be considered as rent, such factor would not compel the conclusion that the tenancy was for month to month. Such factor would merely raise a presumption under section 1945 that the tenancy was for month to month, and would not necessarily control the evidence here present that the parties intended a yearly tenancy. In the present case the presumption created by section 1943, plus the evidence and the reasonable inferences therefrom, support the finding that the parties intended the longer term. This being so, the longer term was created by implication by the holding over.

Defendants contend, however, that, in any event, under the provisions of section 1946, the October 10, 1945, notice to quit terminated the lease, if one existed, one month thereafter. That would be true only if the hiring here were "for a term not specified." The section also provides that the notice

shall be given "at least as long before the expiration thereof as the term of the hiring itself, not exceeding one month." Here the term of the hiring was impliedly for one year. That means that on September 1, 1945, the term was impliedly renewed for one year. To have prevented the renewal of the term, under section 1946, the notice to quit would have had to be given on August 1, 1945. The October notice could not terminate the year tenancy already in existence.

But, say defendants, this arrangement for an annual year to year lease violated the statute of frauds. ■ Of course, an oral one-year lease is not within the statute. (Civ. Code, § 1624(4).) ■ It is equally clear that an oral agreement for a one-year lease to be annually renewed for one-year terms at the desire of the tenant is violative of the statute. ■ But defendants are in no legal position to raise the point. The complaint alleged that the agreement was oral. Defendants failed to demur, nor did they plead the statute of frauds in their answer. When the oral testimony was introduced they made no objection. They now seek to raise the defense of the statute of frauds for the first time on appeal. Under such circumstances they must be deemed to have waived the defense. (See cases collected 12 Cal.Jur. § 109, p. 939; § 110, p. 941.) ■ In addition, it must be remembered that the first four years of plaintiff's occupancy have been fully executed. As to these periods already executed, the statute has no application. All that is before us is the period from September 1, 1945, until August 31, 1946. As already pointed out, a one-year lease is not within the statute. If the entire agreement must be considered as a unit, the four-year plus part performance would take the case out of the statute. (*Schubert* v. *Lowe,* 193 Cal. 291 [223 P. 550]; *Grant* v. *Long,* 33 Cal.App.2d 725 [92 P.2d 940].) Thus, under any theory, the statute has no application.

■ This brings us to the most troublesome question on this appeal, namely, whether the findings that defendants committed certain acts amounting to a constructive eviction are supported by the evidence. In this connection the trial court found as follows:

"That plaintiff had always during the conduct of said restaurant business enjoyed the privilege of serving sandwiches at defendants' bar when ordered by customers, but on October 9, 1945, defendants refused further to permit plaintiff to

44

do so any longer and defendants immediately thereafter entered upon a conspiracy among themselves to ruin plaintiff's said restaurant business in order to force her to abandon said restaurant business in order to force her to abandon said restaurant premises by various malicious acts of conduct and untruthful statements on their part designed to drive plaintiff's customers away from said premises and her said restaurant business, some of which are as follows:

"That on October 10, 1945, said defendants untruthfully advised one of the plaintiff's customers that plaintiff was not in business there any more;

"That on October 18, 1945, defendants forcibly removed the lock on the door to said restaurant premises after 12 P.M. of said day when said restaurant was closed for the day, and removed certain of plaintiff's property therefrom for use in said cocktail lounge;

"That on November 5, 1945, the defendants pried the lock of said door to said restaurant premises again and entered said restaurant premises and removed seven and one-half (7½) pounds of hamburger steak from the refrigerator in said restaurant to the loss of plaintiff;

"That on November 12, 1945, defendants removed and disposed of or secreted plaintiff's sign advertising her restaurant and dining room business on said premises;

"That on November 12, 1945, John Smith, one of said defendants, in a loud and insulting manner and voice and in the presence and hearing of customers and designed to insult and embarrass plaintiff and her employees and to detrimentally affect plaintiff's business, told one of plaintiff's female employees regarding certain dishes and food equipment remaining on a table in said cocktail lounge to 'take the crap out of the bar room';

"That on November 18, 1945, defendants said to a customer of plaintiff not to eat in her restaurant any more as they 'wanted to freeze her out';

"That on November 22, 1945, defendants advised inquiring customers of plaintiff by telephone that plaintiff was not making reservations for Thanksgiving dinner at her restaurant when as a matter of fact plaintiff was taking reservations for Thanksgiving dinner on that day and always did enjoy a profitable Thanksgiving dinner business, and as a result of said untruthful statements by defendant, plaintiff served only seven (7) dinners that day;

"That on November 27, 1945, when plaintiff went to her restaurant about 11 o'clock A.M. of said day to open her business, she found the gas shut off so that she could not proceed with her business;

"That defendants have since October 10, 1945, been guilty of a continuous program of harassment against plaintiff and her business by many other acts of conduct too numerous to mention here, designed to injure plaintiff and her business and the quiet enjoyment thereof." These findings are taken almost verbatim from the allegations of the complaint. It must be conceded that, as to most of these findings, there is no evidence at all to sustain them—in fact, as to most of them, not one question was asked about them. What the record does show is this: Plaintiff had, through her own efforts, built up a profitable restaurant business operated in connection with the bar. After Matheson came in as a partner in April of 1945 some friction developed between him and plaintiff. It is a reasonable inference from the evidence that thereafter, and about October of 1945, the partners decided to force plaintiff to abandon her profitable business. They served the notice to quit on October 10, 1945, and, when plaintiff refused to abandon her business, they commenced a course of conduct aimed at forcing her to abandon the premises. The evidence most favorable to plaintiff, which we must accept, together with the reasonable inferences from that evidence, show that in the fall of 1945 the attitude of defendants towards plaintiff became definitely unfriendly. When restaurant customers ordered drinks from the bar such orders were not quickly filled. One waitress testified that when she served sandwiches at the bar the defendants rudely told her, apparently in the presence of the customers, to "get that crap out of here." Plaintiff testified as to the change in attitude on the part of defendants, and also that the outside sign advertising the restaurant was removed. While she could not say that defendants removed the sign, it is a reasonable inference that they caused it to disappear. A number of plaintiff's customers testified that prior to October and November, 1945, they had frequently telephoned the bar and restaurant to make dinner reservations and always were able to get the plaintiff, but that in October and November when they telephoned they were told by male voices that plaintiff was no longer in business there. The evidence shows that on such occasions plaintiff was not only in business, but was actually on the premises.

The customers could not identify any of the defendants as the persons who told them that plaintiff was out of business, nor could plaintiff so testify, but it is a reasonable inference that defendants or their employees thus attempted to ruin the business. The evidence shows that during the times in question there were two telephones in the bar—one on the wall, and an extension behind the bar which was usually attended by one of the defendants. The normal procedure was for the person behind the bar to answer the phone, but occasionally this was done by customers. While defendants denied ever having told customers of plaintiff that she was no longer in business, these denials were not believed by the trial judge. He saw these witnesses and undoubtedly believed that defendants were not telling the truth. Under the circumstances, and under the evidence already set forth, he could and did reasonably infer that defendants were responsible for the misrepresentations. His finding, under such circumstances, cannot be disturbed. This being so, although some of the findings are not supported, we are of the opinion that a sufficient number of the findings are supported to justify the court in finding a constructive eviction. The correct rule, supported by many cases, is thus stated in *Kulawitz* v. *Pacific etc. Paper Co.*, 25 Cal.2d 664, 670 [155 P.2d 24] : ''Any interference by the landlord by which the tenant is deprived of the beneficial enjoyment of the premises amounts to a constructive eviction if the tenant so elects and surrenders possession . . .'' (See, also, cases collected 15 Cal.Jur. § 89 et seq., p. 679.)

 Appellants next contend that under the state Constitution (art. XX, § 22), and under the provisions of the Alcoholic Beverage Control Act (Stats. 1935, p. 1123, as amended), they violated the law and the terms of their state license in separating the ownership and operation of the bar from that of the restaurant, and that plaintiff was *in pari delicto* with them in thus violating the law. The problem as to whether a bar licensee has violated the terms of his state license in thus separating the ownership and operation of the bar and restaurant presents a most interesting question, but it is one that is not here involved. Plaintiff has not grounded her claim to a leasehold interest upon any intended infringement of the law by defendants, even if she knew of the assumed violation. A leasing of premises—even of premises upon which a bar is located—for restaurant purposes is certainly legal. The restaurant could be operated whether or not a bar was also operated. The plaintiff's right to occupy such premises

for restaurant purposes must be considered separate and apart from any intention on the part of defendants to violate the law in the respect that they now so cheerfully admit. The true rule applicable to this situation was stated in *Wayman Inv. Co.* v. *Wessinger,* 13 Cal.App. 108, 110 [108 P. 1022], as follows: "Although there may be some illegal features indirectly connected with a transaction involved in a suit, yet the plaintiff may recover if his cause of action is otherwise legitimate, and he can make out his case without calling to his aid the illegal agreement. The test of whether the demand can be enforced at law is whether the plaintiff requires the aid of the illegal contract to establish his case." (See, also, *McAllister* v. *Drapeau,* 14 Cal.2d 102, 112 [92 P.2d 911, 125 A.L.R. 800]; *Warner* v. *Marchetti,* 52 Cal.App.2d 172, 177 [125 P.2d 838]; *Wagner* v. *Worrell,* 76 Cal.App.2d 172, 179 [172 P.2d 751].)

The last contention of defendants is that the evidence is insufficient to support the award of $4,500. The trial court found that plaintiff had been deprived of the leased premises for a period of nine months, and that her profits were $500 per month. The plaintiff testified as to her profits for the year 1945, and such evidence amply supports the finding. Defendants offered no evidence on the issue. But plaintiff also testified that between January and April, 1946, she operated a restaurant in Oakland, and, during that period, made a net profit of $450. In April, 1946, she became ill, and thereafter was unable to work. There can be no doubt at all that the $450 made during the term of the lease should have been deducted from her total loss of $4,500. She is entitled to recover only her net loss, and that was $4,050 and not $4,500, according to her own testimony. The fact that she became ill in April, and earned nothing thereafter, does not reduce her right to recover the loss caused by defendants' breach of the lease. There is no evidence that, even though plaintiff was ill, had the lease not been breached by defendants' wrongful acts, plaintiff would not have continued to operate the restaurant through her employees and would not have made at least $500 per month profit.

The appeal from the order denying the motion for a new trial is dismissed. So far as the appeal from the judgment is concerned, the findings are modified so as to provide that plaintiff earned the sum of $450 between the months January to April, 1946; the conclusions of law are modified to likewise so provide and to provide that such sum should be deducted

from the sum of $4,500; and the judgment is modified by reducing the amount thereof from $4,500 to $4,050. As so modified, the judgment is affirmed, both sides to bear their own costs on this appeal.

Ward, J., and Bray, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied September 30, 1948.