[Civ. No. 5332.   Fourth Dist.   May 3, 1956.]

RICHARD N. SPARKS, Respondent, v. H. J. RICHARDSON, Appellant.

Louis S. Edelberg for Appellant.

Daniel L. Jensen and William B. Boone for Respondent.

MUSSELL, J.—This is an action on a promissory note. Defendant in his answer admits that he signed the note but alleges that it was not supported by a good and valid consideration and did not reflect the true agreement of the parties. He admits having paid $2,250 on the note and, as an affirmative defense, alleges that in signing it he mistakenly believed that it contained only the provisions set forth in a memorandum which he delivered to the Blackstone Realty Company. He asks that the note be reformed by striking therefrom the acceleration clause and the agreement to pay attorney's fees. He further alleges that the services for which the note was given involved the transfer to defendant of notes and trust deeds; that said notes and trust deeds were securities; and that the note sued upon was invalid because neither plaintiff nor his assignor was licensed as a securities broker. Defendant also filed a cross-complaint in which he sought cancelation or reformation of the note and recovery of the sum of $2,250 paid to plaintiff thereon.

Plaintiff Sparks was employed as a real estate salesman by F. A. Bier, doing business in Fresno under the name of Blackstone Realty Company, and it was stipulated by the parties that neither Bier nor Sparks ever had a securities broker license.

Defendant Richardson was the owner of the Richardson Mortgage Company and was also a licensed real estate broker. On or about October 13, 1954, plaintiff Sparks received a brochure in the mail from Richardson in which he

described his real property, consisting of 21 apartment units in Merced, California, which units he offered to sell on the following terms: ''Price $167,500. Will consider exchange. Will take 1st or 2nd trust deeds in trade. Brokers cooperation invited.'' Sparks then wrote to Richardson on October 13, 1954, as follows :·

''We received a brochure of your apartment building in Merced, which you wish to sell.

''We have a client who has some scattered properties and some first and second trust deeds, who wants to trade on a larger piece of property.

''If you would be interested in something like this, please let me know and I will see if we can work out a deal.''

Thereafter certain real properties owned by one Nixon were shown to Richardson by Sparks, who then, on October 27, 1954, procured an exchange agreement signed by Richardson in which Richardson agreed to transfer his 21 Merced apartment units to Nixon in exchange for certain real property owned by him in Hanford and Carmel, together with two notes secured by liens on property in Santa Cruz and Riverdale. In this agreement Richardson promised to pay to the Blackstone Realty Company the sum of $8,375 commission for services rendered by the company as broker. The sum of $2,094 was paid out of escrow on this commission and the balance of $6,281 was represented by the promissory note here involved. On October 28, 1954, escrow instructions, prepared by Security Title Insurance Company, were signed by the parties and the note for the balance of the commission was typed out by the escrow officer in the presence of Sparks and Richardson. The escrow officer testified that after he had typed out the note in question, he handed it to Richardson, who appeared to read it and then signed it. The escrow officer further testified that he got the information to make the note from the original escrow instructions; that these instructions were signed by Richardson before the note was executed and contained the following provisions: ''Pay Blackstone Realty a commission in the total amount of $8375.00 payable as follows $2094.00 cash; $6281.00 by personal note payable $125.00 or more monthly including interest at 6% per annum; first payment due 30 days after close of escrow and the entire note due and payable 2 years from close of escrow.''; that the note contained the customary acceleration clause and provision for attorney's fees in the event of default in installments; that all note forms used at the Security Title

Company contain such acceleration and attorney's fees provisions; that it was the usual thing for a real estate broker to receive his commission in the form of a promissory note; that he had made out such notes on many previous occasions; and that he had never made out such a note without such provisions in it.

Defendant testified that he executed the note and read it at the time "but not completely"; that he read the first part of it which set forth the amount and the monthly payments but did not read the balance, which he later found incorporated the acceleration clause and the provision for attorney's fees.

The note involved was assigned by Bier to plaintiff Sparks and no payments were made on it until after suit was filed, when Richardson paid $1,858.70 on principal, $141.30 interest, and $250 attorney's fees. No commission was claimed by Sparks for handling the Nixon notes and trust deeds and Sparks testified that the note sued upon did not involve any commission on the Nixon notes or trust deeds; that the note here involved was for the commission on the sale of real property for Richardson.

The trial court entered findings of fact and conclusions of law and judgment in favor of plaintiff and against the defendant and cross-complainant. It was found and concluded, generally, that the allegations of the complaint were true; that the amount due and owing on the note at the date of trial was the sum of $4,465.35, including principal and interest, and that plaintiff was further entitled to the sum of $750 as attorney's fees, less a credit of $250. The court further found against the allegations in the cross-complaint as to defendant's mistaken belief in the terms of said note and the circumstances under which it was executed. Judgment was entered in accordance with these findings and defendant appeals therefrom. He argues that a securities broker's license is required to deal in securities; that a promissory note secured by a trust deed is a security; and that respondents contracted to and did perform an illegal act for appellant.

While section 25700 of the Corporations Code provides that no person or company shall act as an agent or broker without a license, and a note is defined in section 25008 of said code as a security, section 25102, subdivision (c), provides that promissory notes, whether secured or unsecured, when the notes are not offered to the public, are not subject to the

law. ▮ In the instant case the testimony of Sparks was that the consideration for the note on which this action was brought was a commission for services as licensed real estate broker and salesman in effecting a sale or transfer of appellant's real property. There was no evidence that respondents or either of them were hired by appellant to act as securities agents or brokers in his behalf. While there was evidence that an oral listing of the Nixon notes was taken, the testimony of both Bier and Sparks was that they never attempted to deal with anyone concerning these notes. Under such circumstances, respondents, who were licensed real estate brokers, were not required to obtain a license to sell securities in order to be entitled to recover a commission from appellant for the sale of his real estate. If this were an action to recover on a note for a commission for the sale of securities owned by Nixon, a different problem would be presented. However, the note here relied upon arises out of a contract wherein appellant agreed to pay a commission for the sale of his real estate and if, in fact, plaintiff Sparks attempted to sell securities for Nixon, such action is clearly severable from the contract with appellant. (*Joy Mfg. Co.* v. *Julian Petroleum Corp.*, 208 Cal. 168, 171 [280 P. 952].) ▮ In *Wilson* v. *Stearns*, 123 Cal.App.2d 472, 480 [269 P.2d 59], the court said: ". . . (i)n determining whether a real estate broker may be deprived of the value of his services, already admittedly earned, his contract will not be declared invalid upon the basis of anything not embraced within the terms of the applicable statute."

▮ In *Aaker* v. *Smith*, 87 Cal.App.2d 36 [196 P.2d 150], it is said:

"The true rule applicable to this situation was stated in *Wayman Inv. Co.* v. *Wessinger*, 13 Cal.App. 108, 110 [108 P. 1022], as follows: 'Although there may be some illegal features indirectly connected with a transaction involved in a suit, yet the plaintiff may recover if his cause of action is otherwise legitimate, and he can make out his case without calling to his aid the illegal agreement. The test of whether the demand can be enforced at law is whether the plaintiff requires the aid of the illegal contract to establish his case.' (See also *McAllister* v. *Drapeau*, 14 Cal.2d 102, 112 [92 P.2d 911, 125 A.L.R. 800]; *Warner* v. *Marchetti*, 52 Cal.App.2d 172, 177 [125 P.2d 838]; *Wagner* v. *Worrell*, 76 Cal.App.2d 172, 179 [172 P.2d 751].)"

The aid of any contract between plaintiff and Nixon was not necessary to the establishment of plaintiff's case herein.

■ Appellant argues that the note should be reformed to express the true intent of the parties. The trial court found against this contention and we cannot say as a matter of law that its finding in this connection is not supported by substantial evidence. The note was typed out by the escrow officer and handed to appellant, who read and signed it. He admitted that he read it "but not completely." The note was short, simple and easily read. Appellant was a licensed real estate broker dealing primarily in notes and trust deeds and had previously transacted business with the title company. All note forms used by the company contained clauses for acceleration and attorney's fees. Appellant spent several hours in studying the documents used in the transaction and the court could and apparently did reasonably infer that appellant did in fact read, understand and agree to the terms of the note before signing it. As was said by this court in *California Trust Co.* v. *Cohn,* 9 Cal.App.2d 33, 41 [48 P.2d 744]:

"While it is true that, as was said in *Los Angeles & Redondo R. R. Co.* v. *New Liverpool Salt Co.,* 150 Cal. 21 [87 P. 1029], the mere failure of a party to read an instrument with sufficient attention to perceive an error or defect in its contents will not prevent reformation of the instrument, this means no more than that a satisfactory explanation of the failure to read will justify a trial court in holding that the explanation relieves the party from a charge of negligence which, if unexcused, might properly warrant denial of the remedy of reformation. In the instant case the trial court was not bound to accept the naive explanation offered by appellants as an excuse for their failure to read the written contract. It is apparent from an examination of the record that the court took the view either that the failure to read comprehendingly was not sufficiently explained or that in fact the instrument was read comprehendingly and that appellants were merely attempting to escape the consequences. It is immaterial which of these two views the court adopted."

Finally, appellant claims that there are no findings on material issues. In this connection it is claimed that the court failed to find on the issue of whether respondents were unlicensed as securities brokers. ■ However, it was stipulated that the respondents were not so licensed and a finding as to such fact was unnecessary. (*Wilson* v. *Mattei,* 84 Cal. App. 567, 572 [258 P. 453].) ■ The court found on the

issues raised in the cross-complaint as to the intent and agreement of the parties and where, as here, findings were made upon all the issues which determined the case, no prejudicial error in that respect appears. (*Chester R. Pyle Co.* v. *Fossler,* 200 Cal. 204, 209 [252 P. 599].)

The judgment is affirmed.

Barnard, P. J., and Griffin, J., concurred.

A petition for a rehearing was denied May 29, 1956, and appellant's petition for a hearing by the Supreme Court was denied June 27, 1956.