[L. A. No. 19964.   In Bank.   July 28, 1948.]

HENRY HENIGSON, Appellant, v. BANK OF AMERICA NATIONAL TRUST & SAVINGS ASSOCIATION (a Corporation) et al., Respondents.

Loeb & Loeb and Herman F. Selvin for Appellant.

Roth & Brannen and Frank M. Gunter for Respondents.

EDMONDS, J.—During his lifetime, Myron Selznick conducted a theatrical agency licensed under the provisions of the Labor Code. Henry Henigson, a former employee of the organization, sued to establish his rights under a contract made by him and Selznick. After the commencement of the action, Selznick died, and the litigation has continued upon a claim for compensation filed with the executors of the decedent's estate. The principal question for decision which is presented by Henigson's appeal from an adverse judgment concerns the legality of the contract.

Henigson's employment commenced in December, 1941. He had the title of vice-president and general manager, but the trial court found that "his position was not different from that of any other Selznick employee. . . . He was one and only one of a supporting staff of employees with whom Selznick had surrounded himself." The agreement as to the terms and conditions of the employment was not stated in writing until some months later. This writing was never signed by either of them, but they acted under its provisions.

By the terms of the contract, Selznick employed Henigson to render services in an executive capacity and agreed to pay him a fixed salary of $300 per week and contingent compensation of "one-half (½) of all sums of money or other consideration, in any form, received directly or indirectly by us, or by Myron Selznick, individually, or by any of our affiliated or associated enterprises or companies, from any deal relating either directly or indirectly to a so-called 'independent set-up.' " An independent set-up was defined as "any deal or arrangement as a result of which there will be produced or financed or distributed a motion picture and from which deal or arrangement there will accrue to ourselves or to Selznick sums of money, proceeds, bonuses, shares of profit, or other consideration, other than the usual commissions normally payable to us as commission by our clients." Henigson was to receive not less than $200 per week "as a non-repayable advance against such contingent compensation."

After specifying that the contingent compensation should

be computed on an annual basis, the agreement provided that "the aggregate compensation payable to you hereunder (direct and contingent) shall not in any event exceed" $104,000 per annum. In computing the amount of contingent compensation, no deduction was to be made for Selznick's ordinary and current expenses connected with the operation of the agency business, or for extraordinary legal or other expenses in connection with independent set-ups, without Henigson's consent.

The agreement was deemed to have commenced January 1, 1942. It might be terminated by either party at any time but, notwithstanding such termination, Henigson's right to contingent compensation should extend beyond the date of termination and until Selznick had received all commissions and other considerations in any form from all independent set-ups originating during the period of employment. And finally, "if subsequent to the termination of your employment hereunder any such independent set-up be changed or modified, or a new contract be entered into in replacement or substitution of the contract relating to any original set-up covered by this agreement, you shall nevertheless continue to be paid your contingent compensation hereunder in connection with such changed, modified, substitute or replacement deal, for such period as we would have been obligated to pay the same had such set-up continued as originally constituted."

Henigson performed services under the agreement until December 31, 1942, when, with the consent of Selznick, he terminated the employment. He had received $26,000 as salary and the guaranteed minimum contingent compensation payable under the contract for that period. Selznick had not then received any money from an independent set-up entered into by him and Hunt Stromberg during Henigson's employment by which Selznick was to receive 10 per cent of Stromberg's profits, and one motion picture made by Stromberg is alleged to have returned a profit in excess of one million dollars.

The principal purpose of Henigson's suit in its original form of declaratory relief was to establish his right to a share of the money due to Selznick from this independent set-up. After Selznick's death, his executors and Stromberg entered into a compromise agreement by which the estate acquired an interest in five motion pictures to be produced by Stromberg, he to have the right to reinvest the profits from one

picture in the next one. Henigson was not a party to this compromise.

The trial court, based upon a finding of fact that notice of the Henigson employment contract had not been given to the Labor Commissioner, as required by section 1595 of the Labor Code, made the following conclusions of law: (1) that between May 2, 1942, and the end of that year, Selznick had no license to carry on his business, although it was, in fact, carried on; (2) during that time, the business was not being lawfully conducted, and no valid rights or claims were acquired which otherwise might have been the basis for Henigson's contingent compensation; and (3) the employment agreement between Henigson and Selznick is ended and Henigson has no right or claim thereunder against Selznick or his estate.

An alternative finding declares that if the conclusions as to the asserted illegality of the Henigson-Selznick contract are erroneous, then the following are the rights and duties of the parties: (1) upon the death of Selznick the agreement between him and Stromberg was terminated; (2) Selznick's executors then became vested with a cause of action against Stromberg for the reasonable value of services performed until Selznick's death, less any sum already paid; (3) Henigson had an interest in that cause of action and the executors are the trustees of his interest; (4) if the executors acted in good faith and exercised ordinary care, they did not require the consent of Henigson to execute the compromise agreement; (5) Henigson has no claim against or lien on property held by Stromberg, although he might sue in a representative capacity if the executors did not act with due care or in good faith; and (6) Henigson's recovery should be limited to $78,000, which is the difference between $26,000 paid to him and the contract limit of $104,000 per year.

Henigson contends that the contract of employment is not one which comes within those specified by section 1595 of the Labor Code. In any event, he argues, Stromberg's liability arose under a contract executed prior to the contract of employment. He is not bound by the compromise agreement but at the time of Selznick's death he had a fixed right to one-half of the amount due to Selznick. A contrary determination, it is said, would allow unjust enrichment of the Selznick estate. The final point is that Henigson's right to recovery should not be limited to $78,000.

The executors take the position that there never was a binding contract, and, if there were such a contract, it is invalid under section 1595 of the Labor Code. They also argue that Henigson's theory as to a vested right upon the death of Selznick is an entirely new one which is raised for the first time on appeal and, in any event, Henigson's recovery cannot properly exceed $78,000.

The trial court, in making its alternative conclusion of law to the effect that if the determination as to legality of the contract under the Labor Code was erroneous, certain rights accrued to Henigson, clearly found that, aside from any statutory impediment, Selznick made a binding contract with him. "[I]t is well settled that parties who have not appealed cannot attack the findings, the only objections thereto which can be received being those urged by appellant." (*Kane* v. *Eastman,* 110 Cal.App. 753, 759 [295 P. 63]; see, also, *Ray* v. *Parker,* 15 Cal.2d 275, 282 [101 P.2d 665]; *Calif. C. P. Growers* v. *Williams,* 11 Cal.2d 233, 238 [78 P.2d 1161]; *Klauber* v. *San Diego St. Car Co.,* 98 Cal. 105 [32 P. 876].) Therefore, whether or not Henigson has any rights which may be enforced against the Selznick estate depends upon the applicability of section 1595 of the Labor Code.

That statute reads: "If any licensee sells, transfers, or gives away any interest in or the right to participate in the profits of the employment agency without the written consent of the Labor Commissioner the license of the employment agency shall immediately become void and thereupon be surrendered to the Labor Commissioner." The executors contend, and the trial court found, that the Henigson-Selznick contract amounted to a "transfer . . . [of] the right to participate in the profits" of the Selznick agency, and therefore that Selznick's license became void and no rights could accrue under the contract. Henigson's position is that the contract does not involve a "right to participate in the profits" within the meaning of the statute.

The only case in which this language has been considered is *Warner* v. *Marchetti,* 52 Cal.App.2d 172 [125 P.2d 838]. In that case Warner, a talent scout, made a contract with a licensed agent whereby the agent agreed to pay Warner one-half of any commissions received from the employment of persons introduced to him by Warner. In defending a suit based upon this contract, the agent argued that it violated section 1595 of the Labor Code and Warner could enforce

no rights arising under its provisions. Contrary to this contention the court said: "There is nothing in the record herein which would substantiate the claim that respondent was financially interested. . . . As a talent scout, respondent was an independent contractor whose task was completed when she discovered a potential artist and introduced such artist to appellant or to any other agent in the field. She has no contractual relations with the prospect and has no control over the business transactions by which the agent seeks to procure employment for such prospect. Her only interest is in the payment to her of the commission agreed upon in the event she produces and introduces to the agent a potential moving picture personality."

The executors seek to distinguish the Warner case upon the ground that it involved an independent contractor, whereas Henigson was an employee of the agent and had control or active participation in the negotiations leading to the agreement from which the commissions were derived. There is no basis for such a distinction. In both cases the agent agreed to split his commissions from a restricted portion of the agency business and each agreement concerned the gross receipts, not technically "profits." In neither case did the plaintiff have control of the negotiations with the third party from whom the revenue was obtained although, in both instances, the agent agreed to pay contingent compensation for such services as were given. Obviously, section 1595 of the Labor Code was designed to protect the public from uncontrolled subletting of the right to carry on a theatrical agency business, but a contract to share in the amounts received by an agent from a third party under the conditions denominated by Selznick and Henigson as an independent set-up is beyond the scope of statute. The basic premise of the judgment, therefore, is erroneous, and the alternative determination, based upon findings of fact, must be considered in determining the rights of the parties.

 The trial court found that, if the Henigson-Selznick contract were valid, Selznick's executors "became vested with a cause of action against Stromberg for the reasonable value of the services." It was to satisfy this cause of action that the executors entered into the compromise agreement. Henigson contends that, as he was not a party to the settlement, he is not bound by it. He argues that if Selznick's estate had a vested interest, he had a similar right to one-half of the

value of that cause of action. But although by his contract with Selznick, Henigson acquired an interest in money received from Stromberg by Selznick, he has no right to money not yet paid to Selznick.

The trial court characterized Selznick's executors as "trustees for Henigson" and declared that if they acted in good faith and exercised reasonable care in making the compromise with Stromberg, Henigson is bound by their agreement. It is clear that by the terms of his contract with Henigson, Selznick could have modified or replaced the original agreement and Henigson would merely have had a right to "continue to be paid [his] contingent compensation thereunder in connection with such changed, modified, substitute or replacement deal." This being the extent of Henigson's rights under the contract, Selznick's executors, without the consent of Henigson, could make a similar modification or compromise of the rights arising under the contract. In view of the express provisions of the employment contract, he does not stand, as he claims, in a position similar to that of a broker working on a commission who has a right to compensation which cannot be defeated by any subsequent compromise of his principals. Accordingly, if on a retrial of the action, the court finds that the executors acted in good faith and exercised due care in compromising their claim against Stromberg, Henigson is bound by their agreement and he is entitled to one-half of any moneys received by the compromise within the maximum amount specified by the contract.

The contract limited the aggregate compensation payable to Henigson, direct and contingent, to the maximum sum of $104,000 per annum, and the trial court found that he is entitled to no more than that amount for the services which he rendered. The terms of the contract are entirely clear. Henigson's employment by Selznick continued for one year. It is the duration of the employment and not the time of payment which determines his rights. Having received $26,000 during the year of his employment, he is entitled to such amount, not exceeding $78,000, as may be due to him by accruals of the contingent compensation.

The judgment is reversed and the cause is remanded for further proceedings in accordance with this opinion.

Gibson, C. J., Shenk, J., Carter, J., Traynor, J., Schauer, J., and Spence, J., concurred.