[Sac. No. 6273. In Bank. Mar. 1, 1954.]

H. L. E. MEYER, JR., et al., Respondents, v. STATE BOARD OF EQUALIZATION, Appellant.

378

Edmund G. Brown, Attorney General, James E. Sabine and Irving H. Perluss, Assistant Attorneys General, and Norman B. Peek, Deputy Attorney General, for Appellant.

Anthony J. Kennedy and Carl Kuchman for Respondents.

EDMONDS, J.—H. Meyer and B. Meyer, doing business as H. L. E. Meyer, Jr. and Company, paid retail sales taxes on shipments of coke from an Illinois manufacturer to various consumers in California. In computing the taxes, the Meyers omitted from their calculations of "gross receipts"[1] the costs of transporting the coke. Based upon such costs, an assessment for additional taxes was levied by the State Board of Equalization and paid by the Meyers under protest. After exhausting their administrative remedies, they sued for the amount of the protested payment, and the appeal is from a judgment in their favor.

The transportation charges were stated separately from the purchase price, the complaint charged, and the transportation occurred after the sale of the coke to the purchaser. The Meyers also asserted that the assessment of a sales tax upon transportation charges is an unconstitutional burden upon interstate commerce. In paragraph VIII of the complaint it was alleged that "said sales were made by Pickands Mather & Co., Cleveland, Ohio, as agents for Interlake Iron Corporation, South Chicago, Illinois, and *plaintiffs as broker to purchasers in California.*" (Italics added.)

The board's answer admitted or denied expressly some of the allegations of the complaint, but others, including those stated in paragraph VIII, were not mentioned.

By stipulation, the sole evidence presented at the trial

---

[1]Section 6012 of the Revenue and Taxation Code provides: " 'Gross receipts' mean the total amount of the sale . . . price . . . without any deduction on account of any of the following: . . .

"(c) The cost of transportation of the property prior to its sale to the purchaser. . . .

" 'Gross receipts' do not include any of the following: . . .

"(g) Transportation charges separately stated, if the transportation occurs after the sale of the property is made to the purchaser."

consisted of the documents used in connection with a shipment of coke to General Metals Corporation, a California company. It was agreed that this shipment is representative of all of the purchases covered by the additional assessment. The documents show the following transaction:

Upon receiving from General Metals a purchase order for a quantity of coke, the Meyers executed with Pickands Mather and Company, agents for Interlake Iron Corporation, a coke sales contract naming Meyer and Company as buyer, Pickands Mather, agents, as seller, and General Metals as consignee. The coke was shipped to General Metals under a uniform straight bill of lading, the original together with a weight certificate and Pickands Mather's invoice being sent to Meyer and Company. The invoice stated the quantity of the coke and the price, "22.10 PER TON F. O. B. CARS OAKLAND, CALIFORNIA, TRANSPORTATION CHARGES COLLECT & ALLOWED."

The Meyers then sent to General Metals their own invoice, attached to which was the original bill of lading and original weight certificate. This invoice was addressed to General Metals and recited as "BOUGHT OF H. L. E. MEYER JR. & CO." the same quantity of coke at "23.10 per 2000# fob car Oakland, Calif. Transportation charges collected & allowed."

As conclusions of law from the stipulated facts, the trial court determined that in the transactions covered by the additional assessment, the Meyers acted as brokers and not as buyers or sellers, and there was no sale within the meaning of section 6006 of the Revenue and Taxation Code.[2] It was further concluded that such an additional assessment would be an unconstitutional burden upon interstate commerce. As "findings of fact" it was declared that the transportation occurred after the sale of the coke to the California consumers and that such charges were stated separately from the purchase price.

The board contends that each of these conclusions is erroneous. It takes the position that the transaction was a sale of the coke to the Meyers and a resale by them to General Metals Corporation.

The "finding of fact" that the transportation charges, separately stated, were incurred after the sale of the coke is also challenged by the board. No conclusion of law was

---

[2] " 'Sale' means and includes:
"(a) Any transfer of title or possession . . . of tangible personal property for a consideration."

drawn from it as to whether such charges are to be excluded from "gross receipts" as defined by section 6012 of the Revenue and Taxation Code. However, for the purpose of this appeal, such finding may be treated as a conclusion of law. (*Cf. Lencher* v. *Chase*, 98 Cal.App.2d 794, 802 [220 P.2d 921].)

The Meyers take the position that title passed to General Metals Corporation when the coke was delivered to the carrier. The board asserts that title passed to the Meyers at the time the coke was delivered to the consignee, and did not pass to General Metals until such delivery or a later time. It points out that the sale to Meyer and Company was f.o.b. destination point and a similar arrangement existed between the Meyers and General Metals.

██ The sole evidence being the written documents without qualifying testimony, their legal effect is a question of law, and the interpretation given to them by the trial court is not binding upon appeal. ██ In the absence of extrinsic evidence, "there is no issue of fact, and it is the duty of an appellate court to make the final determination in accordance with the applicable principles of law." (*Estate of Platt*, 21 Cal.2d 343, 352 [131 P.2d 825]; *Moore* v. *Wood*, 26 Cal.2d 621, 629-630 [160 P.2d 772]; *Western Coal & Min. Co.* v. *Jones*, 27 Cal.2d 819, 826-827 [167 P.2d 719, 164 A.L.R. 685]; *Estate of Fleming*, 31 Cal.2d 514, 523 [190 P.2d 611].)

By the contract between them, Pickands Mather agreed to sell and Meyer and Company agreed to buy the coke. Meyer and Company was described as "buyer" with Pickands Mather as "seller." Pickands Mather's invoice to the Meyers states charges for coke "sold to" Meyer and Company. Similarly, the invoice sent to General Metals states charges for coke "bought of H. L. E. Meyer Jr. & Co." The bill of lading and weight certificate covering the shipment were sent to the Meyers, and there is a complete absence of any direct dealings between Pickands Mather and General Metals.

Rule 5 of section 1739 of the Civil Code provides: "If the contract to sell requires the seller to deliver the goods to the buyer, or at a particular place . . . the property does not pass until the goods have been delivered to the buyer or reached the place agreed upon." Here the sales contract provided for consignment of the coke to General Metals Corporation, "Foot of 105th Avenue, Oakland, California."

No contract between Meyer and Company and General

Metals Corporation was included in the stipulation of facts. However, the purchase order of General Metals and Meyer and Company's invoice both provide for f.o.b. delivery, Oakland being stated as the destination point. ▮ Under the principles discussed in connection with the sale between Pickands Mather and Meyer and Company, title did not pass to General Metals until after the delivery of the coke in Oakland.

The fact that General Metals was the consignee of the coke does not exonerate the Meyers from liability for the sales tax. The Supreme Court of Alabama in an almost identical transaction concluded that, in legal effect, it was a sale and resale. (*Graybar Electric Co.* v. *Curry*, 238 Ala. 116 [189 So. 186], affirmed 308 U.S. 513 [60 S.Ct. 139, 84 L.Ed. 437]; rehearing denied 308 U.S. 638 [60 S.Ct. 259, 84 L.Ed. 530].)

A similar situation was shown in *Standard Oil Co.* v. *Johnson*, 24 Cal.2d 40 [147 P.2d 577], in which a sales tax was sought to be levied upon shipments of fuel oil to out-of-state destinations under standard bills of lading naming the buyer consignee, with freight charges prepaid by the shipper. The court held that there was no tax liability. "Whether or not delivery to a carrier constitutes delivery to the buyer depends upon the intention of the parties as ascertained from the contract and the other circumstances of the case, and ordinarily, unless a contrary intent appears, where the seller contracts to deliver goods at a given destination and he delivers them to a carrier consigned to the buyer with freight charges paid by the seller (f.o.b. point of destination), the delivery to the carrier does not constitute delivery to the buyer and title does not pass until the goods have arrived at their destination." (Pp. 45-46.)

The Meyers seek to distinguish the Standard Oil case on the ground that there the freight charges were paid by the seller and included in the costs of the sale. In the present case, it is argued, the freight charges were paid by General Metals and allowed by the Meyers in their invoice to General Metals, and by Pickands Mather in their invoice to Meyer and Company, as a deduction from the sales price. Such a distinction is immaterial. The present situation is expressly included within the scope of the retail sales tax under Sales and Use Tax Ruling No. 58 (Cal. Admin. Code, tit. 18, § 2028) which provides that in an f.o.b. destination contract, no deduction may be taken for freight whether paid by the shipper or paid to the carrier by the purchaser and deducted

from the sales invoice as a "freight allowance." In principle, there should be little distinction between the two situations, particularly where, as here, the transaction is handled as a charge to the buyer's open account.

■ The trial court's conclusion that the levy of a sales tax upon the shipments included within the assessment would be an unconstitutional burden upon interstate commerce is based apparently upon the erroneous view as to the nature of the transactions which has been advanced by the respondents. However, it is not an interstate sale by Pickands Mather which is being taxed but an intrastate sale from Meyer and Company to General Metals. Accordingly, the claim of unconstitutionality is without merit. (*Cf. Wiloil Corp.* v. *Pennsylvania*, 294 U.S. 169, 175 [55 S.Ct. 358, 79 L.Ed. 838]; *Graybar Electric Co.* v. *Curry, supra*, at pp. 189-190.)

The appeal is presented on a partial clerk's transcript consisting of the judgment roll and the notices designated by rule 5(d) of the Rules on Appeal, and including the exhibits which comprise the stipulation of facts. ■ The pleadings include an amendment to the board's answer which declares that it was filed "Pursuant to leave of court contained in the Memorandum Directing Findings filed in the above entitled matter on November 20, 1951." No contention is made by the Meyers that the amendment was filed without authority, and it must be presumed that the recital in the pleading is correct. (*Livermore* v. *Webb*, 56 Cal. 489, 492; *Dowling* v. *Comerford*, 99 Cal. 204, 206 [33 P. 853]; *Riverside County* v. *Stockman*, 124 Cal. 222, 223-224 [56 P. 1027]; *Segerstrom* v. *Scott*, 16 Cal.App. 256, 260 [116 P. 690]; *Gaddis* v. *Grant*, 39 Cal.App. 437, 439 [179 P. 410].) In the Segerstrom case it was said: "The amended answer itself declares that the same was filed by leave of the court 'first had and obtained,' and there is nothing appearing on the judgment-roll inconsistent with this statement of the amended answer. In the absence of an affirmative showing to the contrary, this declaration of the amended answer must be accepted as verity, and even if it contained no such declaration and there was no proper affirmative showing that it was not true, this court would be compelled to indulge the presumption that the amended answer was duly filed, or filed with the trial court's permission." (16 Cal.App. p. 260.) Thus, in the absence of both a direct assertion that the pleading was unauthorized and a motion by the Meyers to augment

the record to include a transcript of that proceeding, this court must presume that the amendment was proper.

The Meyers assert, however, that it "is established by the pleadings . . . that title passed from Interlake Iron Corporation . . . to the California Purchasers, with plaintiff serving as broker." They take the position that a fact once admitted remains an admission, regardless of whether a contrary amendment to the pleading is filed, with or without permission from the court.

 It is well established that an amendatory pleading supersedes the original one, which ceases to perform any function as a pleading. (*Pfister* v. *Wade,* 69 Cal. 133, 138 [10 P. 369]; *Kentfield* v. *Hayes,* 57 Cal. 409, 411; *Collins* v. *Scott,* 100 Cal. 446, 453 [34 P. 1085]; *Darsie* v. *Darsie,* 49 Cal.App.2d 491, 493 [122 P.2d 64]; *Viera* v. *Viera,* 107 Cal. App.2d 179, 180 [236 P.2d 630].) Accordingly, the only answer that may be considered as a pleading is the one modified by the board's amendment. (*Cf. Bray* v. *Lowery,* 163 Cal. 256, 260 [124 P. 1004].)

It is generally recognized, however, that a superseded pleading may be given some evidentiary effect, although the courts are not in accord as to the circumstances under which it may be considered. (See IV Wigmore on Evidence (3d ed. 1940) 61, § 1067.) By a long line of decisions, it is established in this state that such a pleading is not admissible as direct evidence to establish a fact in issue. (*Mecham* v. *McKay,* 37 Cal. 154, 165; *Ponce* v. *McElvey,* 51 Cal. 222, 223; *Morris* v. *Lachman,* 68 Cal. 109, 112 [8 P. 799]; *Osment* v. *McElrath,* 68 Cal. 466, 470 [9 P. 731, 58 Am.Rep. 17]; *Wheeler* v. *West,* 71 Cal. 126, 128 [11 P. 871]; *Stern* v. *Loewenthal,* 77 Cal. 340, 343-344 [19 P. 579]; *Ralphs* v. *Hensler,* 114 Cal. 196, 198-199 [45 P. 1062]; *Miles* v. *Woodward,* 115 Cal. 308, 316 [46 P. 1076]; *Pollitz* v. *Wickersham,* 150 Cal. 238, 248 [88 P. 911]; *Cornwell* v. *Mulcahey,* 62 Cal.App. 658, 661 [217 P. 568]; *Gajanich* v. *Gregory,* 116 Cal.App. 622, 629 [3 P.2d 389]; *Jackson* v. *Pacific Gas & Elec. Co.,* 95 Cal.App.2d 204, 209 [212 P.2d 591].)[3] The reason for this view is that the use of superseded plead-

---

[3]In *Rhode* v. *Bartholomew,* 94 Cal.App.2d 272 [210 P.2d 768], an amended complaint was filed containing allegations inconsistent with the original one. The court said: "The allegations of the original complaint which were stricken stand as admissions of the facts alleged. A party will not be permitted to disprove admissions in his pleadings." (P. 279.) This statement is not supported by reasons or citation of authority, nor is the holding in *Lowmiller* v. *Monroe, Lyon & Miller, Inc.,* 101 Cal.App. 147, 153 [281 P. 433, 282 P. 537]. In *Miller* v. *Lee,* 66

ings to such extent as to embarrass the amending party is in derogation of the policy of liberality in permitting amendments to pleadings. (See *Taft* v. *Fiske*, 140 Mass. 250, 252 [5 N.E. 621, 622].) ▓ However, where the party has testified in the action, a superseded pleading may be offered for the purpose of impeachment. (*Johnson* v. *Powers*, 65 Cal. 179, 180 [3 P. 625]; *O'Connor's Estate*, 118 Cal. 69, 71 [50 P. 4]; *Schuh* v. *R. H. Herron Co.*, 177 Cal. 13, 17 [169 P. 682]; *Williams* v. *Seiglitz*, 186 Cal. 767, 774 [200 P. 635]; *Weissbaum* v. *Eibershutz*, 211 Cal. 170, 173 [294 P. 396]; *Kambourian* v. *Gray*, 81 Cal.App.2d 783, 789 [185 P.2d 27]; but see *Caccamo* v. *Swanston*, 94 Cal.App.2d 957, 969 [212 P.2d 246].) ▓ And pleadings in prior actions or in others which are pending may be considered either as evidence or for the purpose of impeachment. (*Duff* v. *Duff*, 71 Cal. 513, 522 [12 P. 570]; *Kamm* v. *Bank of California*, 74 Cal. 191, 197 [15 P. 765]; *Coward* v. *Clanton*, 79 Cal. 23, 28 [21 P. 359]; *Mellor* v. *Rideout*, 83 Cal.App. 621, 626 [257 P. 173]; *Estate of McCarthy*, 127 Cal.App. 80, 87 [15 P.2d 223]; *Tieman* v. *Red Top Cab Co.*, 117 Cal.App. 40, 45 [3 P.2d 381]; *Ocean View Memorial Park* v. *Caminetti*, 59 Cal. App.2d 703, 711 [139 P.2d 674]; *Dolinar* v. *Bedone*, 63 Cal. App.2d 169, 176 [146 P.2d 237]; *Jones* v. *Tierney-Sinclair*, 71 Cal.App.2d 366, 373-374 [162 P.2d 669]; *McNeil* v. *Dow*, 89 Cal.App.2d 370, 373 [200 P.2d 859].)[4] ▓ Under these decisions, the board's original answer was not admissible to establish that the Meyers acted as broker in the transaction.

But even in those jurisdictions which allow a superseded pleading to be admitted as direct evidence of a fact in issue, the board's original answer would not serve to support a judgment for the Meyers. As stated by Dean Wigmore in his work on evidence, ''since the superseded pleading is offered, like any other statement of the party constituting a quasi-admission, as an item in the general mass of evidence against the party, it must of course be put in evidence *at the*

Cal.App.2d 778, 785 [153 P.2d 190], it was said that a superseded pleading may be admitted ''as containing admissions . . . [and] for the purpose of impeaching'' the opposing party's testimony. That the pleading may be considered for the latter purpose is established by the California cases. (See *infra*.)

[4] In *Coward* v. *Clanton, supra*, 79 Cal. 23, it was held error to reject an offer of the respondent's answer in another action, which the respondent claimed had been ''superseded'' by his pleadings in the action then before the court. Although the language used in the decision is broad, the holding is consistent with the authorities previously cited.

*proper time.* It therefore cannot be commented on in argument unless . . . it has been thus formally offered in due season.'' (IV Wigmore on Evidence, 68, § 1067.) Here the superseded pleading was not offered in evidence; on the contrary, the action was tried upon a stipulation of facts consisting solely of documents evidencing a representative transaction. Any attempt now to rely upon the original answer must be rejected because of the failure timely to offer it as evidence.

Although not stated specifically in their briefs, the Meyers apparently take the position that it was error for the trial judge to permit an amendment to the answer. They describe the amendment as ''belated'' and assert that an ''attempt after trial to amend a pleading so as to deny what was admitted is completely ineffectual.''

Even if it may be assumed that the Meyers, who have not appealed from the judgment, properly may attack the trial court's ruling on the amendment (*Cf. Ray* v. *Parker,* 15 Cal. 2d 275, 282 [101 P.2d 665]; *Salter* v. *Ulrich,* 22 Cal.2d 263, 268 [138 P.2d 7, 146 A.L.R. 1344]; *Henigson* v. *Bank of America,* 32 Cal.2d 240, 244 [195 P.2d 777]; *Mott* v. *Horstmann,* 36 Cal.2d 388, 393 [224 P.2d 11]) the record does not support their position. Although it has been stated that ''a party will not be allowed to file an amendment contradicting an admission made in his original pleadings'' (*Treager* v. *Friedman,* 79 Cal.App.2d 151, 172 [179 P.2d 387]; *Tognazzi* v. *Wilhelm,* 6 Cal.2d 123, 127 [56 P.2d 1227]; *Rhode* v. *Bartholomew,* 94 Cal.App.2d 272, 278 [210 P.2d 768]), that rule is not without exception. Such an amendment may be allowed where it is clearly shown that the earlier pleading is the result of mistake or inadvertence. (*Tognazzi* v. *Wilhelm, supra* at p. 127; *Jackson* v. *Pacific Gas & Elec. Co., supra* at 95 Cal.App.2d 212; *Seidell* v. *Anglo-California Trust Co.,* 55 Cal.App.2d 913, 923 [132 P.2d 12]; *LeCyr* v. *Dow,* 30 Cal.App.2d 457, 462-463 [86 P.2d 900]; *Cox* v. *Rosenberg,* 58 Cal.App. 181, 188 [208 P. 377].) Nor is it error to allow the amendment after the trial had been completed. (*Feigin* v. *Kutchor,* 105 Cal.App.2d 744, 748 [234 P.2d 264]; *Burrows* v. *Burrows,* 18 Cal.App.2d 275, 279 [63 P.2d 1135].) As stated in *Seidell* v. *Anglo-California Trust Co., supra,* where an amendment to an answer was allowed to include a denial inadvertently omitted from an earlier pleading, ''It is a well-established rule which is founded on good reason and justice that a court should exer-

cise great liberality in permitting amendments of pleadings at any and all stages of the trial to present adequately all issues which are properly involved in the litigation.'' (55 Cal.App.2d, p. 923.)

▮ Although the Meyers do not allege specifically that granting leave to file the amendment was an abuse of the trial judge's discretion, they argue that they were precluded from reopening the case to present additional evidence. (Citing *Federated Income Properties* v. *Hart*, 84 Cal.App.2d 663 [191 P.2d 59]; *Crawford* v. *Senegram*, 7 Cal.App.2d 449 [46 P.2d 173]; and *Eddy* v. *American Amusement Co.*, 21 Cal.App. 487 [132 P. 83].) These cases approved denial of permission to reopen a cause for additional evidence when the evidence, because merely cumulative or corroborative, or lacking in conviction would not alter the result. The Meyers do not point to any evidence which could be produced to disprove or discredit the legal effects of the documents.

▮ An abuse of discretion by the trial judge in making procedural rulings will never be presumed, but must appear affirmatively from the record. (*Berry* v. *Chaplin*, 74 Cal. App.2d 669, 672 [169 P.2d 453].) ▮ On the facts here shown it is clear that the board's failure to deny the allegation in question was not intentional; otherwise there would have been no reason for it to file an answer, enter into a stipulation as to the facts, or go on trial, for the obligation to make refund would have been established by the pleadings. In any event, no transcript of the proceedings relating to the allowance of the amendment has been included in the record on appeal, and in the absence of an application to augment it, that record must be presumed to include all matters material to appellate review of the judgment. (Rules on Appeal, rule 52; *cf. Estate of Pierce*, 32 Cal.2d 265, 274-275 [196 P.2d 1]; *People* v. *Crain*, 102 Cal.App.2d 566, 582 [228 P.2d 307].) On the record properly before this court, no abuse of discretion appears.

▮ There is no merit in the final contention by the Meyers, that the amended answer expressly admits that the taxable sales were made by someone other than they. The complaint alleged that ''said sales were made by Pickands Mather & Co. . . . *and* plaintiffs as broker to purchasers in California.'' (Italics added.) It is clear from the complaint that the sales were by Pickands Mather ''and plaintiffs.'' Very properly, the board has never denied the original sales by Pickands Mather, but seeks to impose a tax upon the

*resale* by the Meyers. It is the capacity in which the resale is made that is disputed, and the Meyers do not assert that the amendment is formally insufficient to place that fact in issue.

In summary, the amended pleadings placed in issue the legal capacity of the Meyers and the nature of the transactions for which a tax has been exacted. A determination of those issues requires a construction of legal documents, a question of law. Reasonably construed, the documents indicate a sale of coke to the Meyers with a resale by them to General Metals.

The judgment is reversed.

Gibson, C. J., Traynor, J., and Spence, J. concurred.

SCHAUER, J.—I dissent.

Perhaps the most striking and regrettable thing about the majority opinion is the all too apparent fact that in *favor of a reversal* it assumes that there was before the court evidence which is not in the record and which establishes mistake and inadvertence of such magnitude as to justify allowing, after the trial had concluded, the filing of an amendment denying a matter previously admitted, while at the same time such majority opinion assumes *against affirming the judgment* that there was nothing before the trial court—not even the earlier pleading containing the admission—which could support the trial court's findings and conclusions.

The principal issue in this case is primarily one of fact: Whether the plaintiffs in negotiating a sale and delivery of coke from a source outside California to a firm in California acted as brokers or as retailers. The defendant assessed plaintiffs upon the theory that they acquired title to the coke, sold it at retail, and are chargeable with "gross receipts" including the claimed retail price and the costs of transportation. There is no question raised by plaintiffs as to the propriety of a *use* tax on the coke, as such, payable by the consumer (and here collected from the consumer by plaintiffs and by them remitted to the state) but plaintiffs deny any liability, direct or secondary, for a *sales* tax including the transportation charges in its base. Upon conflicting evidence the trial court found in favor of plaintiffs. The majority opinion argues the weight of the evidence and the inferences to be drawn therefrom; it draws inferences in favor of reversing, rather than of affirming, the judgment and, in effect, makes findings of fact and conclusions of law contrary to

those of the trial court. As is hereinafter shown with some particularity the evidence supports the trial court's determinations. Hence, the judgment should be affirmed.

Arguing for a reversal, the majority point out that plaintiffs are described as "buyer" in their contract with Pickands Mather and that plaintiffs' invoices to General Metals recite that coke was "bought of" plaintiffs. That evidence is accepted by the majority as conclusive but it is not conclusive. The courts do not regard the use in a document of descriptive terms such as "buy" and "sell," "buyer" and "seller," as conclusive evidence of the character of the transaction. For example, an owner's authorization of a broker "to sell" real estate does not authorize him to execute a contract of sale of the property (*Duffy* v. *Hobson* (1870), 40 Cal. 240, 244 [6 Am.Rep. 617]; *Armstrong* v. *Lowe* (1888), 76 Cal. 616 [18 P. 758]; *Holway* v. *Malloy* (1945), 70 Cal.App.2d 317, 319-320 [160 P.2d 893]); the agreement of a mortgagee that a mortgagor could "buy" the mortgaged property means that the latter can redeem it (*Day* v. *Davis* (1905), 101 Md. 259 [61 A. 576, 578]); "buying" a motion picture means licensing a theatre to show it (*Loew's* v. *Lieberman* (1948), 78 F.Supp. 201, 203).

In conflict with the evidence accepted by the majority, and supporting the trial court's findings and judgment, are the following facts:

*The Conduct of Defendant in Respect to First Admitting and Later Purporting to Deny Certain Material Facts, and the Facts as Established by the Exhibits Attached to the Stipulation of Facts.*

From the inception of the controversy the plaintiffs' position has been, and their complaint has alleged in substance, that they acted only as brokers and never had either title to or possession of the coke which was the subject of the sales. Specifically the complaint alleges: (Par. VIII) that the sales were made "by Pickands Mather & Co., Cleveland Ohio, as agent for Interlake Iron Corporation, South Chicago, Illinois, and plaintiffs as broker to purchasers in California." (Par. IX.) "That said transportation occurred after the sale of the coke to said purchasers." (Par. X.) "That said transportation charges were separately stated from the purchase price to said purchasers and from the gross receipts from said sales." (Par. XI.) "That said assessment is a burden upon interstate commerce in violation

of Article I, Section 8, Clause 3 of the United States Constitution . . .''

In its original answer the defendant denied all the allegations of certain paragraphs (Nos. VII, IX, X, and XI) of the complaint and some of the allegations of one other paragraph (No. IV) of the complaint. Under well established laws of pleading the defendant, by failing to deny them, admitted all other averments of the complaint including all of those set forth in paragraphs numbered I, II, III, V, VI, and VIII. The admitted averments include the allegation that the sales in controversy ''were made by Pickands Mather & Co., Cleveland, Ohio, as agent for Interlake Iron Corporation, South Chicago, Illinois, and plaintiffs as broker to purchasers in California.''

The stipulation of facts contains no statement which challenges the truth of plaintiffs' averments in respect to the capacity in · which they acted, or the identity of the purchasers or their geographic locations, or the truth of defendant's admissions of such averments.

The complaint was filed on April 11, 1951; the answer containing the denials and admissions was filed on April 26, 1951; the case was tried on September 7, 1951; on November 27, 1951 (about two and two-thirds months after the trial) according to a self-serving recital in a purported amendment to the answer, the court allowed (at least there was filed) an amendment to the answer in the following language: ''Pursuant to leave of court contained in the Memorandum Directing Findings . . . defendant files its amendment to the answer herein as follows: . . .

''IV

''Admits the allegations contained in Paragraph VIII of said complaint, save and except that defendant denies . . . each and every allegation of said Paragraph VIII . . . commencing with the word 'plaintiffs' in line 4, page 3, of said complaint, and ending with the word 'California' in line 5, page 3, of said complaint.''

In this connection it is to be noted, in the first place, that the record contains no authorization for the filing of such purported amendment. There is in the record no document purporting to be a Memorandum Directing Findings. There is no evidence of consent by plaintiffs that any amendment be filed. The Stipulation of Facts is dated August 29, 1951; at the trial on September 7, 1951, the stipulation was re-

ceived in evidence as Plaintiffs' Exhibit 1. Such stipulation obviously and necessarily was drawn in view of and in the light of the issues as they were then framed by the pleadings. The pleading at that time admitted that plaintiffs had acted only in the capacity of brokers. The author of the majority opinion in arguing for a reversal asserts that "[A]t the time of trial, by its answer, the board admitted conclusively that the Meyers acted as broker in the transaction and on that state of the pleadings it could not offer any evidence to dispute the fact. . . . However, . . . If the board's amendment properly was allowed, it no longer is conclusively bound to the judicial admission of the original answer."

Obviously, to plaintiffs, the vice of the matter is that at the time of trial there was no occasion for them to, and they could not, offer any evidence directed solely to the capacity in which they acted. Their allegation that they acted only as brokers stood admitted. If the trial court, months after the taking of evidence was closed, assumed to allow ex parte an amendment changing the issues in a manner materially prejudicial to plaintiffs, it erred egregiously, and an amendment so allowed should not be used as the crutch for a reversal.

The majority mention the general rule that "a party will not be allowed to file an amendment contradicting an admission made in his original pleadings" (citing *Tognazzi* v. *Wilhelm* (1936), 6 Cal.2d 123, 127 [56 P.2d 1227], and other cases) but assert that "Such an amendment may be allowed where it is clearly shown that the earlier pleading is the result of mistake or inadvertence." On this latter theory the majority hold that the trial judge was justified in allowing the amendment even though the record contains no evidence whatsoever tending to show mistake or inadvertence. This holding, to the end of a reversal, is declared in the face of the assertions in other parts of the opinion that "By stipulation, the sole evidence presented at the trial consisted of the documents used in connection with a shipment of coke to General Metals Corporation, a California company" and that "The sole evidence being the written documents . . . their legal effect is a question of law . . . In the absence of extrinsic evidence, 'there is no issue of fact.'" One needs only to glance through the stipulation of facts to observe that neither it nor any of the exhibits attached to it contains the faintest suggestion relative to inadvertence or mistake in filing the original answer.

As to the status of the pleadings and the evidence the

plaintiffs' position is thus stated in the petition for a hearing in this court: "The trial was had upon a stipulation of facts formally entered into in writing in advance of trial. Respondents were bound by their stipulation. No leave exists to reopen it. *The stipulation was formed and entered into in the light of the issues framed by the pleadings. Those issues were solely the allegations of Paragraphs IX, X, and XI denied by the Answer, and had nothing to do with respondents' status as a broker, or otherwise.* Those issues were solely whether or not the transportation occurred after the sale of the coke with the transportation charges being separately stated; and whether or not the assessment of appellant upon the transaction burdened inter-state commerce." (Italics added.)

The majority opinion, in its efforts to answer the plaintiffs' claims, is replete with inconsistencies and unfair statements, all designed to the end of reversing—not affirming—the trial court. Thus, in an effort to justify the post trial amendment so that it may be given controlling effect over the findings of the trial court, the majority argue the propriety of the assumed ruling and the facts and the inferences to be drawn in support thereof as follows:

"An abuse of discretion by the trial judge in making procedural rulings will never be presumed, but must appear affirmatively from the record. [Citation.] [This statement is obviously unfair in that in truth it is the defendant, *not* the plaintiffs, who is appellant. The plaintiffs are satisfied with the judgment in their favor and with the necessarily presumed ruling in their favor as to the effect of the purported amendment.] On the facts here shown it is clear that the board's failure to deny the allegation in question was not intentional; otherwise there would have been no reason for it to file an answer, enter into a stipulation as to the facts, or go on trial, for the obligation to make refund would have been established by the pleadings. [The foregoing statement is not accurate; it ignores the fact that the board does impose the tax (or responsibility for collecting it) on brokers who have possession of the goods sold and the contention of plaintiffs that, since they at no time had possession, the matter is governed by Title 18, section 1969, California Administrative Code, applying tax responsibility only to brokers in possession.] In any event, no transcript of the proceedings relating to the allowance of the amendment has been included in the record on appeal, and in the absence of an application to augment it, that record must be presumed to include all matters

material to appellate review of the judgment. [Citations.] On the record properly before this court, no abuse of discretion appears.''

Obviously the foregoing argument, asserted by the majority for a reversal, on any fair application of the law boomerangs against them. If we do indulge the presumption that the record contains ''all matters material to appellate review of the judgment'' then we find nothing whatsoever either to support the purported amendment or to warrant reversing the judgment or any contention that the findings are not fully supported. According to the majority's exact language ''The appeal is presented on a partial clerk's transcript consisting of the judgment roll and the notices designated by rule 5(d) of the Rules on Appeal, and including the exhibits which comprise the stipulation of facts.'' Examination of the document entitled ''Stipulation of Facts'' discloses that it does not purport to declare *all* the facts or the *"sole"* facts material to the cause. The stipulation merely declares ''It is hereby stipulated by and between plaintiffs and defendant that the following are facts for the purpose of this action . . .'' Furthermore, indicating that other matters were received or considered in evidence, the stipulation bears on its face the endorsement ''P1 Ex #1 *Meyer* v. *State Bd. of Equaliz.* 9/7/51.''

Although assuming in favor of a reversal, and of sustaining the allowance of the amendment to its pleading by defendant after the trial, that there was evidence not reported showing mistake and inadvertence, the majority straining to the same end, and against supporting the trial court's findings of fact, say ''Here the superseded pleading was not offered in evidence . . . Any attempt now to rely upon the superseded pleading must be rejected because of the failure timely to offer it as evidence.'' The foregoing statement is made, it will be remembered, notwithstanding the fact that the purported amendment was filed more than two months after the taking of evidence had been concluded and in the face of the fact that this record, prepared as specified by defendant-appellant, contains no reporter's transcript and no certification that oral testimony or exhibits other than Plaintiffs' Exhibit 1 were not received. Certainly there is no showing that the original answer was not received. In truth, at the time of trial when the evidence was being received, it is undisputed that the only answer before the court was the original answer.

It is worthy of mention that the very argument advanced by the appellant (defendant) in its opening brief in opposing one element of plaintiffs' contentions supports them in another. It is there declared that ''Meyer [plaintiffs] and General Metals [the consignee-purchaser-consumer] never entered into any express contract to sell. It would seem that there was merely an offer (purchase order) to buy a certain amount of coke . . . The only way this offer could be accepted was by delivery of the coke to General Metals. Title to the coke could not as a matter of elemental contract law pass until delivery . . . While perhaps Meyer might be able to show an implied contract to sell or an acceptance of the offer of General Metals by the purchase of the coke from Pickands and consignment to General Metals, nevertheless the fact that no express contract to sell was entered into by the parties indicates that they never intended title to pass until the coke was actually received.'' The foregoing statement tends strongly to support plaintiffs' position (and the trial court's finding) that they acted as brokers and never had title; nevertheless it was a proper one for the Attorney General to make because it tended to defeat the claim of plaintiffs that the tax was a burden on interstate commerce and, hence, not even collectible from the consumer.

Again, by way of drawing inferences against the judgment and in favor of a reversal, the majority ignore the fact that the tax law in question imposes a ''use'' tax as well as a sales tax. They assume, against the judgment, that the tax collected from the consumer and forwarded to the board by plaintiffs was a *sales* tax imposed on plaintiffs as sellers rather than a use tax collected by them as brokers from the consumer, and, having so assumed, they draw the inference that plaintiffs thereby admitted that they had made a retail sale.

But if the majority can draw inferences and indulge presumptions so could the trial judge. The trial judge presumed (as he was required to do by subdivisions 1, 33 and 20 of section 1963 of the Code of Civil Procedure, and such presumptions are evidence) that the plaintiffs were innocent of ''crime or wrong,'' that ''the law has been obeyed'' and that ''the ordinary course of business has been followed.'' Accordingly, the trial judge, from the fact that plaintiffs collected and remitted a use tax, in the proper amount on the coke sold if they acted as brokers, and giving effect to the mentioned presumptions, as well as the other evidence

in the record, made findings in favor of plaintiffs. The findings of fact include the following:

## "I

"That each of the allegations of paragraphs VIII, IX and X of the complaint are true.

## "II

"That it is true the sales attributed to plaintiff upon which said additional assessment was based consisted in the amount of $85,547.87 thereof of transportation charges paid to railroad carrier by General Metals Corporation, Oakland, California, for freight upon carloads of Chicago Solvay Coke shipped by Interlake Iron Corporation from its Chicago Coke Oven Plant, South Chicago, Illinois, upon uniform straight bills of lading designating Interlake Iron Corporation as shipper and General Metals Corporation as consignee, all of which coke was delivered by railroad carrier under said bills of lading directly from said place of shipment to said consignee.

## "III

"That it is true each of said shipments was made upon contracts of sale entered into at Chicago, Illinois; that it is true performance of said contracts required interstate shipment of coke from Illinois to California.

## "IV

"That it is true plaintiffs at no time had either possession or title to any of said coke; that it is true plaintiffs at no time transferred either title or possession of said coke to the buyer thereof, General Metals Corporation.

## "V

"That it is true plaintiffs acted in the capacity of a broker in bringing the seller and the buyer of said coke together; that it is true plaintiffs collected from the buyer of said coke and remitted to the agent of the seller of said coke the purchase price thereof exclusive of said transportation charges.

## "VI

"That it is true plaintiffs did not collect from the buyer of said coke a use or sales tax measured by the amount of said transportation charges; that it is true plaintiffs did not pay to defendant a use or sales tax measured by the amount of said transportation charges."

It is at once obvious from the fact that the court found

all of the allegations of paragraph VIII of the complaint to be true, that it either considered the amendment to be improperly before it or so unintelligible and uncertain as to raise no issue or that the evidence otherwise required a finding in favor of plaintiffs' allegation. In truth, it is the duty of this court to presume in favor of the judgment that the trial court found in favor of the plaintiffs on all three of those grounds. In any event, it is indisputable on this record that the trial court in the light of all the evidence, was convinced that the defendant's earlier pleading, admitting the truth of plaintiffs' allegations in paragraph VIII, is in fact true.

If we apply the purported denial to the allegations of paragraph VIII it is at once obvious that the portion denied contains no verb and that the purported denial is unintelligible and should not be construed as sufficient to raise any issue. It also must be presumed, in favor of sustaining the judgment, that the trial court construed the amendment as raising no issue in respect to the capacity in which the plaintiffs acted. But even if we assume that the purported denial does challenge plaintiffs' averments as to the capacity in which they acted, and as to the identity and geographic location of the purchasers, it is to be observed that the purported amendment expressly admits ''That said sales [the sales on which the tax arose] were made by Pickands Mather & Co., Cleveland, Ohio, as agent for Interlake Iron Corporation, South Chicago, Illinois.'' If ''said sales'' (on which the tax was imposed) were made by ''Pickands Mather & Co., Cleveland, Ohio,'' they obviously were not made by plaintiffs in California. It further appears from the documentary evidence, without any conflict, that the coke in question was shipped from Chicago upon uniform bills of lading designating Interlake Iron Corporation as shipper and General Metals Corporation as consignee, and was delivered by railroad carrier under the bills of lading directly from the place of shipment to the consignee. It is simply impossible, in view of the above recited facts, for plaintiffs ever to have had possession of the coke.

As to the findings of the trial court it is to be further remembered that defendant at least originally admitted all the allegations of paragraph VIII. The original answer is still in the record and for purposes of finding the facts still supports the findings which were made. (See *Coward* v. *Clanton* (1889), 79 Cal. 23, 26 [21 P. 359] [pleading in another

action between same parties received as an admission although it had been superseded by amended pleading]; *Lowmiller* v. *Monroe, Lyon & Miller, Inc.* (1929), 101 Cal.App. 147, 152 [281 P. 433, 282 P. 537] [original answer, followed by amended answer, could be considered as "declaration against interest"]; *Miller* v. *Lee* (1944), 66 Cal.App.2d 778, 785 [153 P.2d 190]; *Rhode* v. *Bartholomew* (1949), 94 Cal.App.2d 272, 279 [210 P.2d 768] ["The allegations of the original complaint which were stricken stand as admissions of the facts alleged"]; *Caccamo* v. *Swanston* (1949), 94 Cal.App. 2d 957, 969 [212 P.2d 246].)[1]

It is also to be noted that defendant in its original answer denied "each and every allegation contained in Paragraphs IX, X and XI" of the complaint, but the exhibits attached to the stipulation of facts appear to establish beyond question the truth of plaintiffs' averments in paragraph X ("That said transportation charges were separately stated from the purchase price to said purchasers and from the gross receipts from said sales") and the falsity of defendant's denial thereof.

The exhibits and the pleadings establish beyond question that plaintiffs had their office in San Francisco, California; that the coke which was the subject of the sales was purchased by the General Metals Corporation of Oakland, California; that such coke was purchased through Pickands Mather and Company of Cleveland, Ohio, as agent for Interlake Iron Corporation of South Chicago, Illinois; that the coke was ordered for delivery to and was shipped to the "General Metals Corporation Iron Plant at 701-105th Ave., Oakland 3, California"; that it was shipped on through bill of lading "From the Interlake Iron Corporation (Chicago Coke Oven Plant) . . . Consigned . to General Metals Corp. Iron Plant . . . Oakland," and, consequently, that the pur-

---

[1]On the other hand, "It has been held that when an original pleading contained an admission against interest, the filing of an amended pleading superseded the original one and that the original pleading could not be used as evidence or be considered by the court." (*Jackson* v. *Pacific Gas & Elec. Co.* (1949), 95 Cal.App.2d 204, 209 [212 P.2d 591].) Cases so holding are *Mecham* v. *McKay* (1869), 37 Cal. 154, 165; *Ponce* v. *McElvy* (1876), 51 Cal. 222; *Osment* v. *McElrath* (1886), 68 Cal. 466, 470 [9 P. 731, 58 Am.Rep. 17]; *Wheeler* v. *West* (1886), 71 Cal. 126, 128 [11 P. 871]; *Ralphs* v. *Hensler* (1896), 114 Cal. 196, 198-199 [45 P. 1062]; *Miles* v. *Woodward* (1896), 115 Cal. 308, 316 [46 P. 1076].) But those cases suggest no sound reason why an admission in a superseded pleading should not be evidence, like any other admission, if it is brought home to the party. Here defendant makes no point of the fact that the admission was in a pleading signed by the Attorney General rather than by defendant itself.

ported denials of a portion of paragraph VIII in the amendment to the answer insofar as they deny that the sales were to purchasers in California are obviously false.

There is no evidence whatsoever that the plaintiffs ever had either actual possession or the right of possession of the involved coke or that any of the parties to the transactions ever intended that plaintiffs should take possession of or use the coke or act in any capacity in relation to it except to negotiate the sale and delivery thereof, through conventional business channels and by customary business methods, from the producer in Chicago through its Cleveland agent to the consumer in California.

It is, of course, a matter of common knowledge that brokers speak of making sales and of acting as sellers or buyers when they are acting as brokers for the accounts of others. Even where property is placed in the possession of a broker for sale and it is agreed that the compensation of the broker shall be a certain percentage of the selling price or a sum added to the net price to be paid the seller, the transaction does not necessarily at any time vest title in the broker. He does not become a retailer merely because he arranges a sale for an owner or negotiates a purchase for a buyer. And speaking of the transaction as a "sale" or a "purchase" made by the person acting as broker certainly does not change the status of the broker or alter the character of such transaction. (See generally, 9 Cal.Jur.2d 137, § 4.)

In view of the fact that the evidence amply establishes that there was no "sale" to or by the plaintiffs as defined by the Sales and Use Tax Law—no "transfer of title or possession" (Rev. & Tax. Code, § 6006, par. (a)) to or by them—the judgment should be affirmed upon this ground and it is unnecessary to discuss further findings of the trial court.

For the reasons stated the judgment should be affirmed.

Shenk, J., and Carter, J., concurred.

Respondents' petition for a rehearing was denied March 25, 1954. Shenk, J., Carter, J., and Schauer, J., were of the opinion that the petition should be granted.