[Civ. No. 24186.   Second Dist., Div. Three.   Feb. 11, 1960.]

HAROLD A. EBY, Appellant, v. JOSEPH BENSEMON et al., Respondents.

R. Norman Wenzell for Appellant.

No appearance for Respondents.

BISHOP, J. pro tem.*—The plaintiff has appealed, feeling aggrieved by the judgment for $1,034.65, when he had prayed for one awarding him $3,184.60. His action was based upon a written contract in which he undertook to remodel defendants' store and they agreed to pay him therefor "Cost plus 10%." He alleged that the cost plus 10 per cent was $15,216.68 of which $12,032.08 only had been paid. The trial court held that plaintiff had improperly included in his costs three items: (a) the premiums paid for workmen's compensation and public liability insurance; (b) charges for his overhead and (c) too great a sum in satisfaction of his obligation to his electrical subcontractor. These three items, together with 10 per cent on one of them, totalled $2,149.95, the amount by which plaintiff's judgment disappointed him. We are reversing the judgment because we are satisfied that the amount plaintiff paid for workmen's compensation and public liability insurance should not have been deducted in figuring the basis for his compensation, and a reversal, rather than modification, better serves the interests of justice.

The parties used a printed form for their agreement, subdivision numbered 3 reading: "In consideration of the covenants and agreements hereof being strictly performed and kept by Contractor, including the supplying of all labor, materials and services required by this Contract, and the construction and completion of the structure, Owner agrees to pay to Contractor the sum of *Cost Plus 10%* in installments as follows: *Payments as job progresses.*" We have emphasized the typewritten words inserted in blanks left in the printed form.

The plaintiff had a blanket workmen's compensation policy, covering his operations, and a like public liability policy. As to the former, the premiums he had to pay were directly

*Assigned by Chairman of Judicial Council.

related to his payroll, which he reported quarterly. His testimony was that $242.11 was paid for premiums on these insurance policies as they pertained to defendants' job.

The theory on which this sum was eliminated from plaintiff's claim was based, as we understand it, on this opening sentence of the fifteenth subdivision of the contract: "15. Contractor shall at his own expense carry all workmen's compensation insurance and public liability insurance necessary for the full protection of Contractor and Owner during the progress of the work." In his written opinion, filed as a helpful guide to counsel for the preparation of findings of fact, the trial judge found "that the item of $242.11 . . . cannot be allowed because and for the reason that the plaintiff is not entitled to be reimbursed for premiums paid for workmen's compensation and public liability insurance which he specifically assumed to carry at his own expense under Section 15 of the contract. . . ."

There was not a word of testimony that would throw any light upon the meaning of the provisions now under consideration. We, therefore, are not bound by the interpretations put upon those provisions by the trial court. ▪ The principle is thus stated by our Supreme Court in *Meyer* v. *State Board of Equalization* (1954), 42 Cal.2d 376, 381 [267 P.2d 257, 260] : "The sole evidence being the written documents without qualifying testimony, their legal effect is a question of law, and the interpretation given to them by the trial court is not binding upon appeal. . . . (*Estate of Platt*, 21 Cal.2d 343, 352 [131 P.2d 825] ; *Moore* v. *Wood*, 26 Cal.2d 621, 629-630 [160 P.2d 772] ; *Western Coal & Min. Co.* v. *Jones*, 27 Cal.2d 819, 826-827 [167 P.2d 719, 164 A.L.R. 685] ; *Estate of Fleming*, 31 Cal.2d 514, 523 [190 P.2d 611].)"

▪ We see no exception to defendants' promise to pay plaintiff "Cost Plus 10%" in the provision that the plaintiff, "at his own expense" shall carry two types of insurance for his own and defendants' protection. This provision is, in effect, no different from that appearing earlier in the contract: "5. Contractor shall pay promptly all valid bills and charges for material, labor or otherwise in connection with or arising out of the construction of said structure and will hold Owner of the property free and harmless against all liens and claims for labor and material. . . ." Each provision placed a financial burden on the plaintiff. Each involved a cost. These costs were made the foundation for the remuneration to be paid plaintiff. The use of the particular words, "at his own ex-

pense," was doubtless due to (a) the provision in the preceding subdivision that "14. Owner agrees to procure at its own expense . . . fire insurance . . . such insurance to be written to protect the Owner and the Contractor" and (b) the requirement that the insurance required to be taken out by the contractor under subdivision 15, was to protect the owner as well as himself. Its cost was, in spite of "at his own expense," a cost imposed upon him by the contract and was, in part, the measure of his reward for its performance.

▉ We have rejected the possibility of modifying the judgment by adding the small item of $242.11 to it, because we have concluded that only by a new trial may a just result be realized as to the other two items that were eliminated from plaintiff's claim. The burden was on the plaintiff, of course, to prove his case and we are hesitant to say, with respect to the first of these two items, that the trial court committed reversible error in not allowing plaintiff any amount for his overhead, in view of the shotgun method of its presentation. We find no California case that satisfactorily answers the question: Where the remuneration promised in a contract is "Cost Plus 10%," is the contractor's overhead to be taken into consideration? The defendants have rendered us no assistance, either by brief or oral argument, and plaintiff's contribution is a valid criticism, as an authority on our problem, of *Advance Auto Body Works* v. *Asbury Transp. Co.* (1935)., 10 Cal.App.2d 619 [52 P.2d 958]. Cases on the subject may be found in annotations in 2 A.L.R. 126 and 27 A.L.R. 48, added to by subsequent supplements, and in 17 C.J.S., pp. 826-828, Contracts, section 367b. We deem it inexpedient, in this case, to analyze the cases to determine what, if any, overhead charges may properly be made use of in a cost plus 10 per cent contract; plaintiff's proof of the items included in his overhead was too sketchy. We do note, however, that he includes as overhead some items that should not be so catalogued. For example: As the work of remodeling was carried on while the defendants continued with their ordinary operations, a necessary part of plaintiff's work was the removal of refuse, and its disposal at a city dump, for which a charge was made. The cost of removal and disposal of this refuse would seem to be a legitimate expense, directly attributable to plaintiff's job, and not, as presented, as a part of plaintiff's "overhead."

▉ The third deduction that the trial court made from the amount claimed by the plaintiff, had to do with the obligation

he had incurred to the electrical contractor. The question was: Upon what basis was the sum to be paid the subcontractor to be calculated? Again, we are not saying that the trial court erred in its decision, so that the judgment should be reversed for that reason. But we are persuaded that the probability of a different decision is so great that we should not correct the error respecting the workmen's compensation and public liability premiums by modifying the judgment, but should make a new trial possible by a general reversal.

These two facts clearly appear from the evidence. The subcontractor actually paid his workmen at the rate of $3.90 per hour, but billed the plaintiff $6.00 per hour for their time. If the agreement with the subcontractor was that the plaintiff should pay him for the material that he used and $6.00 per hour for his workmen—then the amount that the plaintiff demanded from the defendants because of this item was correct; it was the cost to him of the electrical work. But if, as it is evident that the trial court concluded, he agreed to pay only the cost to the subcontractor of his material and labor, then the deduction from this item that the court ordered was proper. Again we state: The crucial question is: Upon what basis was the sum to be paid the subcontractor to be figured?

The cryptic answers given by the plaintiff and by the electrical subcontractor, Deichen, to several questions, lend some support to the conclusion that the plaintiff was to pay the cost, to the subcontractor, of the material and labor. Typical is this answer of the subcontractor: ". . . I stated it was on a time and material basis." So it is that we say we are not reversing the judgment because the trial judge had no support for his conclusion; he did. But we note that if all that the plaintiff was to pay the subcontractor was the amount that he, the subcontractor, paid out for "time and material," then the latter took his subcontract, not only without any possibility of making a profit, but with the certainty that he would suffer a loss, due to inexorable social security, unemployment insurance and other charges he had to meet. It is *possible* that he agreed to do the electrical work at a loss. It is not *likely*. What is more likely is that which is implied in what he told one of the defendants: ". . . $6.00 an hour was 50c under the normal rate charged per hour for electricians on the job" and that ". . . the rate I was charging, $6.00 an hour, was what I always charged Mr. Eby on any of our time and material jobs." Later, on redirect, he testified: "The customary charge at that time was $6.50 per hour. This rate

is in a published Bidall book for the given area in Los Angeles." The plaintiff testified that he never questioned the charge of $6.00 per hour that the subcontractor made to him.

We conclude that the judgment should be reversed, generally, so that a new trial may be had and it is so ordered.

Vallée, Acting P. J., concurred.

Ford, J., concurred in the judgment.