[Civ. No. 4983. Fourth Dist. Mar. 19, 1956.]

CALVIN COOK et al., Plaintiffs; BERTHA M. COOK, Appellant, v. JOYCE MEHLBERG et al., Respondents.

Conron, Heard & James for Appellant.

P. R. Borton for Respondents.

BARNARD, P. J.—This is an action for damages arising out of a noncollision accident. The accident happened about 4 p.m. on December 26, 1953, two miles west of Wasco, at the intersection of Highway 466 and Central Avenue. Highway 466 is a two-way paved highway, each lane being 12 feet wide and with a white line in the center. There was a 6-foot shoulder on each side, and 12 feet of smooth dirt between the south shoulder and the south edge of the road. Central Avenue comes into Highway 466 from the south and is also paved.

The plaintiffs, Mr. and Mrs. Cook, were traveling west on Highway 466 at about 40 miles an hour with several cars ahead of them, one of these being driven by the defendant. The evidence indicates that as the defendant was turning to go south on Central Mr. Cook, who was driving plaintiff's car, attempted to pass the defendant's car and the car behind it, with the result that he crashed into a telephone pole which stood at a point 24 feet south of the pavement on Highway 466, and 22 feet west of the west edge of the pavement on Central Avenue. His car left skid marks about 120 feet long which started south of the white line on Highway 466 at a point about 90 feet east of Central Avenue, and continued in a southwesterly direction over the pavement, shoulder and smooth dirt to the east edge of Central Avenue across Central and to the car as it rested against the pole. His car did not strike the defendant's car and it appears, without conflict, that the defendant stopped her car at or near the white line on Highway 466 as she was trying to turn into Central. Mrs. Cook was seriously injured and Mr. Cook received slight injuries.

This action was filed on March 16, 1954. The complaint contained four causes of action. The first cause alleged that Mrs. Cook was at all times the owner of a 1950 Hudson which was being driven by Mr. Cook; that defendant's car was so negligently driven as to force plaintiffs' car off the highway and into the power pole; and that as a direct result "the automobile of the said Bertha M. Cook was damaged" in the sum of $650. The second, third and fourth causes of action realleged those facts. The prayer was for certain damages for Mrs. Cook, certain damages for Mr. Cook, and for $650 for expense incurred by Mrs. Cook "for repairs to her said vehicle." The answer alleged, among other things, that the Hudson was the property of Mrs. Cook, and was being driven by Mr. Cook with her permission, and set up the usual affirmative defenses.

Mr. Cook's deposition was taken on June 30, 1954, and he died on August 31, 1954, from causes entirely unconnected with this accident. Mrs. Cook, as administratrix of his estate, was substituted in his place in the action. The action was tried on November 19, 22, 23 and 25, 1954, and it was dismissed as to Mr. Cook on November 23. A jury returned a unanimous verdict in favor of the defendant. Mrs. Cook has appealed from the judgment.

There was strong evidence in favor of the defendant. The defendant testified that she was traveling west on Highway 466 at about 40 miles an hour, and intended to turn and go south on Central; that she had noticed a car behind her for some distance; that about 300 feet from the corner she slowed down and then put on her blinker for a left turn; that the car behind her slowed down also; that as she started to turn the wheel she saw the Cook car, which was then 20 or 30 feet away to the side and on the left of the center line; that her front wheels were on the white line when the Cook car went past her; and that she came to a stop after the Cook car hit the pole, and when she stopped three-fourths of her car was across the white line. This was corroborated by four adults who testified that they were traveling west on 466, in another car, about 50 feet behind defendant's car; that the Cook car was behind them; that as the defendant approached Central she slowed down to 5 or 10 miles an hour and they saw her blink her lights signaling for a left turn; that their car was also slowed down and almost came to a stop; that the Cook car came up from behind on the left side and went around their car and around the defendant's car; that as the defendant's car was starting to turn they saw the Cook car hit the pole; that when the Cook car went around the defendant's car the defendant stopped immediately; that one front wheel of the defendant's car was across the center line; that the defendant stopped her car in the center of the road, where you would naturally start to make your turn; and that after they saw the Cook car hit the pole they pulled around defendant's car on the right and stopped on the right shoulder.

Mrs. Cook testified that as they were proceeding westerly on 466 there were two or three cars ahead of them; that she did not know whether or not there was another car between their car and the defendant's car; that she was paying no attention to the cars and had been calling the attention of her grandchildren in the rear seat to some lambs; that as she turned back "a car turned crossways in front of us"; that her husband turned to the left, put on his brakes, and the car skidded; and that she did not notice any signal or the blinker on the defendant's car. Mr. Cook, through his deposition, testified that there were about four cars driving along together; that he was about 50 feet behind the defendant's car and there were no cars between them; that the defendant made a left-hand turn in front of him "right at the intersection"; that the defendant gave no signal and he observed no flashing

of a signal light; that the defendant was slowing down when he first noticed her; that this was close to the intersection; that "she just turned right square off the line"; that he applied his brakes "and she was crosswise, she was headed south"; that the defendant had passed the east edge of Central when she made her turn; that when she crossed the line he was about 50 feet from her; that he just rolled along at 40 to 45 miles an hour; that he swerved his car to the left; that the defendant stopped the minute he applied his brakes; that his car went in front of hers; that he was going 45 miles an hour when he applied his brakes; that "I thought I could make the turn" and go south; that he was about 50 feet east of her when she stopped; that she made practically a 90-degree turn to go south; that she slowed down but gave no signal; and that she stopped with the rear end of her car "right close" to the white line. A written statement made by Mr. Cook to a highway patrol officer an hour or two after the accident, and signed by him, was introduced in evidence. It reads:

"I was proceeding West on U S-466 at approx 40 M-P-H. I attempted to pass a vehicle ahead. As my cars front end came about even with rear of vehicle ahead, it suddenly turned left without hand signal or warning of any kinds. I turned left attempting to avoid a collision. The corner was too sharp to turn left, so I turned onto left shoulder, but struck a power pole."

Appellant's main contention is that Mr. Cook's negligence could not be imputed to his wife, and that the court erred in rejecting evidence of community ownership of the Hudson car, in instructing the jury that the negligence of the deceased husband driver was imputed to the wife as owner of the car under the theory that he was driving with her consent, and in refusing to instruct the jury that the negligence of the deceased husband could not be imputed to the wife. The appellant in his opening brief relied on *Flores* v. *Brown*, 39 Cal.2d 622 [248 P.2d 922]; *Kesler* v. *Pabst*, 43 Cal.2d 254 [273 P.2d 257]; *Carroll* v. *Beavers*, 126 Cal.App.2d 828 [273 P.2d 56]; and *Solko* v. *Jones*, 117 Cal.App. 372 [3 P.2d 1028], and argues that a different rule should prevail with respect to imputing the negligence of the husband to a wife where the car involved was the community property of the husband and wife, and where the husband dies after the action is filed but before it is tried. The question thus presented need

not be decided here since no evidence was received showing that this Hudson was the community property of Mr. and Mrs. Cook, and since the only instruction given relating to the doctrine of imputed negligence rested, in accordance with the pleadings, upon the theory of ownership and permissive use as set forth in section 402 of the Vehicle Code, and not upon the husband and wife relationship. It seems to be conceded by the appellant that no evidence was received showing that the Hudson was the community property of the Cooks. In her closing brief it is admitted that the instructions as given by the court were sufficient in form and were "under the state of the evidence properly given." It is then stated that the controlling question is whether or not the court erred in rejecting evidence pertaining to the nature and character of the ownership of the Hudson.

The undisputed evidence is that this car was registered in the name of Mrs. Cook, and the presumption is that she was its owner. (Civ. Code, § 164.) The complaint alleged four times that Mrs. Cook was the owner and in four other places alleged that her car was damaged in the sum of $650, and the prayer asked that that amount be awarded to her "for repairs to her said vehicle." The answer also alleged that this car was the property of Mrs. Cook and was being driven by Mr. Cook with her permission. Not only was no issue presented in this connection, but this admission in the pleadings has considerable force. (*Meyer* v. *State Board of Equalization*, 42 Cal.2d 376 [267 P.2d 257]; *Wennerholm* v. *Standard University School of Medicine*, 20 Cal.2d 713 [128 P.2d 522, 141 A.L.R. 1358].) A bill for repairs to the Cook car, dated January 18, 1954, was admitted in evidence, which was made out to Bertha M. Cook. Mr. Cook, in his deposition, was asked who owned the Hudson and he replied "My wife." He was then asked whether his wife had purchased the car new and he replied that she had. On appellant's motion for a new trial, which was denied, her counsel filed an affidavit confined to the matter of surprise in being unable to produce a witness, Albert Lequieu, at the trial and said nothing concerning the ownership of the car. In his points and authorities in support of that motion one point is thus stated: "The court erred in including (sic) evidence in respect to whether or not the car registered in the name of Bertha M. Cook was the community property of the parties." While the appeal was pending counsel for appellant requested that the record

be augmented by adding his affidavit dated April 19, 1955, in which he stated that during the trial and before Mrs. Cook was called to the stand, in a conference in the judge's chambers, he stated that he intended to and was prepared to prove by her testimony that this automobile was considered community property. The motion to thus augment the record was granted.

This community property matter was referred to only twice during the trial, and then only incidentally. On the first day of the trial a highway patrol officer was asked by respondents' counsel on cross-examination whether his investigation indicated who was the owner of the Cooks' automobile. Appellant's counsel objected and the court stated that it was not necessary to go into the ownership matter, that it was alleged in the pleadings and not denied that it belonged to the plaintiff, and that "you can't show a fact contrary to a pleading." On the same day, Mrs. Cook testified that the car was registered in her name. She was then asked "Where did the money come from that was used to purchase it?" An objection was made that this was not material and the court stated "She alleges in the complaint it is hers," and sustained the objection saying "We have to go according to the pleadings." Appellant's counsel then said "My only thought in that regard was those pleadings were framed when that point wasn't so material." The court replied "You allege in the complaint it was her car, registered in her name, and we can't change the pleadings in this action here."

In view of the strong evidence that there was no negligence on the part of the respondent it seems unlikely that the matter of contributory negligence was a controlling element in the reaching of a verdict. However, it cannot be so held as a matter of law, and the matter of whether or not this car was the community property of Mr. and Mrs. Cook would be material if it could be proved. There was no evidence that it was community property, and the only question in this regard is as to whether the court improperly rejected any such evidence. There was no offer of proof in that regard and no request for permission to amend, and counsel's objection when the matter was first suggested, during the cross-examination of the highway patrol officer, indicated that he was satisfied with the pleadings and did not consider the matter material. The court's remarks when Mrs. Cook was on the stand referred to the pleadings and in saying that "We can't change the

pleadings'' he was talking about the situation as it then existed. This cannot reasonably be deemed a refusal to permit an amendment when no such request was made, and doesn't excuse the appellant from asking for permission to amend or from making an offer of proof. The request for augmentation of the record indicates only that appellant's counsel had the matter in mind early in the trial, and it is not alleged that the court refused to permit him to amend. The rulings were made on the first day of the trial, and although the trial lasted four days no serious attempt was made to establish that this Hudson was the community property of Mr. and Mrs. Cook. As matters stood at the time the court ruled correctly, and no error appears in the court's failure to permit something which was not asked for. Prejudice is not to be presumed, especially in view of the verified·complaint and Mrs. Cook's evidence.

■ The only other point raised is that the court refused to grant a new trial on the ground of surprise. At the close of the taking of evidence the court's attention was called to the fact that a witness who had been subpoened had ''gone to Oregon,'' and counsel for appellant stated ''I want the record to show I called him as a witness.'' The case was then argued to the jury. On his motion for a new trial counsel for appellant presented his own affidavit stating that he had told this witness that he would call him when his testimony was desired; that on November 22, he learned that the witness had gone to Oregon; that he got in touch with the witness on the night of November 23, and the witness said he could not return in time for the trial; that he has since contacted the witness, who is willing to return at a future date or give a deposition; and that affiant has in his possession a written statement by this witness stating certain facts, some of which would be favorable to the appellant and some favorable to the respondent. A counteraffidavit was filed stating that on November 22 a conference was held in the chambers of the trial judge, during which counsel for appellant advised the judge that this witness had left the state; that the suggestion was then made that any motion for a continuance should be presented at that time, and that counsel for appellant then stated that he did not feel that it was necessary to ask for a continuance; and that the trial then proceeded through three days without a continuance being requested at any time.

It appears that the fact that this witness had left the state was discovered on the second day of the trial and no request

for a continuance or for an opportunity to take his deposition was ever made. Neither error nor abuse of discretion appears in this connection.

The judgment is affirmed.

Griffin, J., and Mussell, J., concurred.